THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VAYNE E. LECKRONE, Defendant-Appellant.
Fourth District   No. 4—84—0357

Opinion filed July 24, 1985.

STOUDER, J., concurring in part and dissenting in part.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Gerald G. Dehner, State's Attorney, of Lincoln (Robert J. Biderman and Perry Lee Miller, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Vayne E. Leckrone, was found guilty by a jury of theft, armed robbery, and rape. (Ill. Rev. Stat. 1983, ch. 38, pars. 16—1, 18—2, and 11—1, respectively.) Convictions were entered on the Class X felonies of armed robbery and rape. The court sentenced the defendant to concurrent terms of 30 years' imprisonment on the two convictions. The defendant appeals, arguing that he was not proved guilty beyond a reasonable doubt; that the sentencing court consid-

ered an improper factor in aggravation; and that his sentence was an abuse of discretion. We affirm.

The parties stipulated to several of the facts basic to this case. According to the stipulated facts, shortly before midnight on October 3, 1983, the defendant had sexual intercourse with the female victim in the victim's Lincoln, Illinois, apartment. The parties further stipulated that while the defendant was in the victim's apartment, he possessed a two-blade knife. That knife, the victim's piggy bank, and large amounts of change were in the defendant's possession when, shortly before 1 a.m. on October 4, 1983, police officers stopped him in his car.

There was lengthy testimony at the defendant's trial. We will only briefly set out the major testimony presented. The victim testified that she arrived home from her work as a newspaper reporter at 11 p.m. on October 3. At about 11:30 p.m. she was watching television when she heard and answered a knock at her door. The man at the the door was unknown to her. In response to his request, the victim allowed the man to enter her apartment to use her telephone.

According to the victim, after the man entered the apartment he forced her at knifepoint to have sexual intercourse with him. Also at knifepoint he took from her $25 and her piggy bank. The victim identified the defendant as the man in question.

On cross-examination the victim admitted that when she first spoke to the police concerning the instant occurrences she untruthfully told them, *inter alia*, that her attacker had forced his way into her apartment.

The defendant testified in his own behalf. According to the defendant, at 10:30 p.m. on October 3 he was sitting outside a tavern located near the victim's office. When the victim walked past him, she and he had a conversation. Just before the victim walked on, according to the defendant, she invited him to her apartment.

According to the defendant's testimony, later that night he decided to go to the victim's apartment for the night. There, the defendant and the victim engaged in consensual sexual intercourse. According to the defendant, as he was removing his trousers at the victim's apartment, his knife fell from his pocket. The knife's unique design attracted the victim's attention, but the knife remained on the floor. He never used it.

The defendant further testified that when he decided to leave, despite the victim's protests, the two exchanged angry words. The defendant took the victim's piggy bank, instructed her that he was charging her for their sex, and left.

On appeal, the defendant's first argument is that he was not proved guilty beyond a reasonable doubt. Specifically, the defendant argues that as the evidence was consistent with the intercourse having been consensual and as the victim admitted having lied to the police, the evidence was insufficient to prove his guilt. In his argument, the defendant asserts that the conviction depended upon the victim's testimony, which was impeached by her own admissions. The defendant also points out that much of the testimony other than the victim's was consistent with his testimony on consent.

In its counterargument the State correctly observes that resolution of the facts in this case required primarily an examination of the credibility of the witnesses.

Weighing credibility of witnesses and otherwise assessing evidence presented are matters for the trier of fact. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.) The existence of conflicting evidence is insufficient grounds for reversal of the finding of the trier of fact. (*People v. Springs* (1972), 51 Ill. 2d 418, 283 N.E.2d 225.) A court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Sumner* (1969), 43 Ill. 2d 228, 252 N.E.2d 534.

■ We do not consider that the record reveals a reasonable doubt of the defendant's guilt. The victim's testimony was clear and unhesitating. She satisfactorily explained her prior inconsistent statements to the police both by her unsettled mental state immediately following the defendant's visit to her apartment and by her concern at the time for how she, a young, single woman living alone, would explain to her parents that she had voluntarily allowed the defendant into her apartment. Neither the defendant's own nor any other testimony presented raises a reasonable doubt of the defendant's guilt.

■ The defendant's second argument is that the sentencing court erred in considering the defendant's lack of remorse.

During the sentencing hearing the defendant addressed the court. He stated that he was sorry for having taken the victim's piggy bank but that he could not say he was sorry about the armed robbery or the rape because they had not occurred. The defendant lastly stated he had no hard feelings against anyone.

Prior to announcing the defendant's sentence the court stated the following:

> "The court also considers the defendant's demeanor as a witness, considers his statements here today of no hard feelings about the rape or armed robbery because he says it didn't hap-

pen. A jury of twelve people in this county who spent a considerable time deliberating this particular case found that Mr. Leckrone had committed the crime of rape, the crime of armed robbery and the included offense. *** Mr. Leckrone gave no and gives none today, any sign of remorse. As I indicated, the jury found him guilty. Certainly in a bench trial before this court without the benefit of a jury Mr. Leckrone would have been found guilty of all three charges."

The defendant argues that he expressed remorse as to the admitted theft of the piggy bank and that he further merely continued to profess his innocence as to armed robbery and rape. He asserts that the trial court erroneously considered the defendant's alleged lack of remorse as a factor in aggravation.

The State argues that the defendant has waived this argument by failing to object in the trial court. Alternatively, the State argues that either the court properly considered the defendant's lack of remorse, or any error was harmless.

The State argues that defendant has waived this objection to the court's comments by failing to interpose a contemporaneous objection. Ordinarily we would agree and deem the error waived unless "plain error" resulted. However, we believe that the considerable confusion engendered by conflicting precedents necessitates addressing this argument on the merits.

It has been consistently held that courts may not use a defendant's continued insistence on his innocence at the time of sentencing against him. (*People v. Sherman* (1977), 52 Ill. App. 3d 857, 368 N.E.2d 205.) This is premised upon defendant's right to seek a reversal of his conviction or other post-conviction relief. Standing alone, this is a simple and reasonable proposition. However, numerous cases have held that it is proper for a court to consider a defendant's lack of remorse as a factor in determining potential for rehabilitation. (See, *e.g., People v. Porter* (1980), 83 Ill. App. 3d 720, 404 N.E.2d 337.) These two sets of decisions create an apparent contradiction. How can a defendant be expected to express remorse for a crime which he believes he did not commit?

It would be easy to fashion a rule that countenances this anomaly. All that would be required is a reading of the comments of the sentencing judge to see which set of magic words was incanted. A simple solution no doubt, but intellectually dishonest.

A better framework can be found in traditional principles of review. The trial court has wide discretion in matters of sentencing. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) A review

of an exercise of discretion requires great deference to the actions and words of the court. It is only when a sentence of the trial court is clearly enhanced by means of an improper factor that we may hold that this discretion has been abused.

■ We believe that it is no more acceptable for a court to punish a defendant's lack of remorse than to punish his insistence on his innocence. In determining sentence the court has myriad factors to consider. One thing that should not be considered is defendant's attitude concerning the verdict of a jury. A convicted criminal defendant remains a litigant in an adversarial proceeding. That he shows no remorse should be of no concern to the court, since in theory defendant persists in his position until his right to appeal has been exhausted.

■ Thus, we choose not to distinguish between a defendant's lack of remorse and his continuing professions of innocence. However, there remains the question of scope of review in light of the court's broad discretion in matters of sentencing. Part of this discretion includes the court's duty to assess certain less tangible factors in determining an appropriate sentence. Also included is the court's right to comment on these factors. Accordingly, we hold that a defendant's lack of remorse or persistence in a claim of innocence can only be the basis of a reversal if it is manifestly clear from the record that the final determination of sentences reflects the consideration by the court of these factors. We should also add that this in no way affects the power of a sentencing judge to consider a defendant's expression of remorse as a mitigating factor. In that instance, a defendant ceases to be a true adversary and becomes a participant in the process of corrections.

■ Turning to the case at bar, we find the court's assessment of defendant's attitude and conduct to be within his discretion. While the court expressed dismay at defendant's lack of remorse, it is clear from a complete reading of the comments, especially in light of the defense raised, that the principal concern was with the assertion of a fabricated version of events. A consideration of defendant's truthfulness is clearly a proper factor in sentencing (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9). Even assuming that the court considered defendant's lack of remorse, it is not at all clear from the record that defendant's sentence was enhanced thereby. Therefore, we find no error arising from the comments of the sentencing judge.

■ Finally, defendant challenges his 30-year sentence as excessive. We cannot agree. Length of sentence is particularly within the court's discretion. Defendant claims that his past record of minor crimes does not support such a severe sentence. However, there is a

battery conviction present, which tends to show something of a violent disposition. Moreover, the crime of rape is among the most heinous and brutal of offenses. That it was committed by use of a deadly weapon in the victim's home only aggravates the seriousness of the act. The sentence entered was well within the court's discretion. Accordingly, the judgment of the circuit court of Logan County is affirmed.

Affirmed.

BARRY, J., concurs.

JUSTICE STOUDER, concurring in part and dissenting in part:

I agree with my colleagues the defendant's conviction should be affirmed. However, I would remand the case to the trial court for reconsideration of the defendant's sentence.

The majority has presented an excellent discussion of the logical inconsistency of permitting consideration of the defendant's lack of remorse in face of the right of the defendant to persist in his claim of innocence. The majority has forthrightly concluded that the lack of remorse should not be considered in enhancement of defendant's sentence where the defendant persists in his innocence. I agree with this reasoning, and I think it should form a part of the objective framework in sentencing determination.

However, the majority, after holding that the punishment should not be enhanced by lack of remorse, then concludes that the adverse implications from the remarks of the trial judge were insufficient to show any enhancement of the punishment. In doing so the majority relies heavily on the broad discretion that a sentencing court has in determining the sentence to be imposed. It well may be the broad discretionary authority the trial court has in sentencing is and should suffice to approve the result reached in this case. If so, then the rule so forthrightly described might well be characterized as a legal truism incapable of enforcement and of no practical significance.

From the remarks of the trial judge quoted in the majority opinion, I think the judge was quite concerned about the defendant's lack of remorse, and his remarks, rather than indicating idle speculation, suggest the substantial significance he attributed to the defendant's conduct. I think it can be fairly concluded from the observations of the majority that the erroneous consideration of lack of remorse would rise to the level of prejudicial and reversible error only if the judge quantified the portion of the sentence attributable to the lack of

remorse. I am unaware of any quantification rule, and I am skeptical it should be applicable in determining whether reversible error has occurred. No doubt this is a practical resolution of the problem, but I would hope that the unfairness of a sentencing consideration could be recognized when it occurs. I have set forth these remarks with some reluctance, since I am well aware of the limitations placed on appellate courts in the review of sentences as well as the difficulties of applying objective standards to sentencing.