THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD ELLIS *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—85—3225, 1—86—1633 cons.

Opinion filed August 9, 1989.—Rehearing denied September 6, 1989.

Debra R. Salinger, of Chicago, for appellant Trellis Bailey.

Frederick F. Cohn, of Chicago, for appellant Reginald Ellis.

Cecil A. Partee, State's Attorney, of Chicago (Kenneth T. McCurry, Kim A. Novi, and Caroline Koplin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendants, Reginald Ellis and Trellis Bailey, were found guilty of murder in a joint bench trial. Each defendant was sentenced to serve 30 years in the Illinois Department of Corrections. On appeal, Ellis argues that the trial court erred in denying his motion to quash arrest and suppress statements and in excluding evidence of the victim's prior arrest and convictions. Bailey argues that (1) the trial court erred in excluding evidence of the victim's prior arrest and convictions; (2) the State failed to prove beyond a reasonable doubt that his theory of self-defense was unreasonable; and (3) the trial court abused its discretion in sentencing defendant to serve 30 years in prison. We affirm.

Martin Hunter, brother of victim Larry Hunter, testified on behalf of the State. Martin stated that on May 30, 1984, at approximately 10:30 p.m., he was driving his automobile with his brother Larry in the front passenger seat. They were traveling eastbound on 91st Street in the direction of St. Lawrence Avenue when an automobile pulled out in front of them and began to drive slowly down the street. When the car reached the middle of the block it stopped and Martin blew his horn. The car again began to move slowly down the block. When the car reached the corner of 91st Street and St. Lawrence, it stopped at the stop sign and the occupants of the car held a conversation with someone in a nearby park. Martin waited for a few seconds, then got out of his car and approached the driver of the car in front of him. Martin asked the driver, "Why are you doing this? Why don't you let me by?" The driver of the automobile, later identified as Aaron "Tuffy" Williams, exited his car, stood face to face with Martin and asked him what he was going to do. Martin then began to back away and told Tuffy to get in his car and let him pass. Tuffy advanced in Martin's direction and Martin struck him, knocking him to the ground.

Tuffy got up from the ground, and Trellis Bailey, who was a passenger in Tuffy's car, got out and began to walk toward the driver's side of the auto. The victim, Larry Hunter, then exited his car and confronted Bailey. Bailey and Larry began to fight and scuffle with each other. Martin saw Tuffy make a motion in the direction of the park and about five to eight men came over to the car. One of the men grabbed a portion of a car jack from his car and several others grabbed sticks. The men attacked, but Martin and Larry ran away, leaving their automobile in the street with the keys in the ignition. As Martin and Larry left, they observed that the rear window of their car was broken. One of the men jumped in Martin's car and drove it away.

Martin and Larry returned home, called the police and waited outside their house. While they waited for the police to arrive, a car drove

westbound on eastbound 91st Street. As Martin walked toward his house, Ellis and Bailey exited the car and began chasing him and Larry. Martin went through the alley between 91st Street and 91st Place, while Larry ran in the opposite direction. Reginald Ellis and Bailey followed Larry. Meanwhile, Martin picked up a board from the alley and ran back toward 91st Place. As Martin reached 91st and Eberhart, he observed Ellis and Bailey beating his brother Larry as he lay on the ground. Martin yelled and told the men to leave his brother alone. Both men were holding long sticks, later identified as baseball bats. Bailey struck the victim again. Martin approached the defendants. As Ellis ran by, he swung a baseball bat at Martin and Martin struck him with the board he was holding. The defendants left the area.

During the cross-examination of Martin Hunter, counsel for defendant Ellis attempted to introduce evidence of Larry Hunter's prior arrests. The trial court sustained the State's objection and ruled that the evidence was immaterial.

Dr. Eupil Choi, a forensic pathologist, testified that his autopsy of the victim revealed four external blunt trauma lacerations to the head area, a laceration below the left elbow, and one on the right hand. An internal examination of the victim's head revealed a fractured skull and jawbone with multiple brain contusions and a massive brain hemorrhage. The victim's death was caused by multiple blunt trauma to the head.

Trellis Bailey testified on his own behalf. Bailey stated that Martin Hunter struck his friend Tuffy for no apparent reason. He further stated that when he got out of the car to come to Tuffy's aid, Larry Hunter approached him from behind and began to beat him. He testified that he grabbed a baseball bat from a bystander and chased the Hunters. Bailey further testified that he went to Reginald Ellis' home and told him what happened. Ellis joined him and they went looking for the Hunters. Bailey testified that when they saw the Hunters they got out of their car and chased them. He stated that he followed Larry Hunter and confronted him with a baseball bat. When Larry turned, lunged at him and stated, "I'm going to kill you," Bailey struck him in the head with the baseball bat several times and fled the area.

At the hearing on Ellis' motion to quash arrest and suppress evidence, the following facts were revealed. Chicago police detective Anthony Maslanka testified that on June 1, 1984, he received information regarding Ellis' involvement in Larry Martin's murder. Maslanka obtained Ellis' arrest record and photograph and proceeded to Ellis' mother's home. When he arrived, he observed Ellis through the front

window. Maslanka's knock on the door was answered by a man and woman. When he asked for Reginald Ellis, they told him that they were not his parents and that they were not sure where Ellis was. When Maslanka informed them that he had seen Ellis from the window and he was wanted for an investigation of a homicide, he was allowed to enter. Ellis was located and arrested at the entrance to a hallway leading from the front to the rear of the house.

Reginald's father, Richard Ellis, testified that he was visiting his ex-wife's home when someone knocked at the door. He stated that when he answered the door, he saw two plainclothes police officers. Richard Ellis testified that the officers asked for the person wearing the hat and then pushed their way into the house through the open door. He stated that he did not invite them in and that after they entered they proceeded to the rear of the house and returned with Reginald. Ruby Ellis, Reginald Ellis' mother, testified that her son was with her in the rear bedroom of their home when a police officer entered with a flashlight and arrested Reginald. Reginald Ellis subsequently gave a court-reported statement in which he admitted his participation in the beating of Larry Hunter. After hearing all the evidence and arguments, the court denied Ellis' motion to quash arrest and suppress statements. At the conclusion of the trial, the court found both defendants guilty of murder and sentenced each to serve 30 years in prison. This appeal followed.

Defendant Ellis first argues that the trial court erred in denying his motion to quash his warrantless arrest and suppress his subsequent statement. It is defendant's contention that because the arrest was executed without either consent to enter his mother's home or the presence of exigent circumstances, it should have been quashed and his statement suppressed. We disagree.

A warrantless arrest executed within a defendant's residence must be supported by consensual entry given by someone who has control over the premises or the existence of exigent circumstances which justify the arrest. (*People v. Bean* (1981), 84 Ill. 2d 64, 69, 417 N.E.2d 608, 611; *People v. Calhoun* (1984), 126 Ill. App. 3d 727, 735, 467 N.E.2d 1037, 1042.) The function of a court in an evidentiary hearing is to determine the credibility of witnesses and the weight that should be given their testimony. (*People v. Manion* (1977), 67 Ill. 2d 564, 577-78, 367 N.E.2d 1313, 1320.) Voluntariness of consent is a factual determination and a reviewing court should not substitute its judgment for that of the trier of fact unless the finding is manifestly erroneous. *People v. Koniecki* (1985), 135 Ill. App. 3d 394, 402, 481 N.E.2d 973, 980.

■ In the present case, the trial court found that there was conflicting testimony on the issue of whether or not the police had consent to enter the Ellis home. The court specifically found that Richard and Ruby Ellis' testimony conflicted regarding the circumstances surrounding their son's arrest, and noted that those discrepancies affected their credibility and the weight which the court would give their testimony. The court also considered the seriousness of the charge and the police officers' observation of defendant through the front window of the house prior to the arrest when evaluating the presence of exigent circumstances. In sum, it is apparent that after weighing the evidence, the trial court found that the totality of the circumstances indicated that there was both consensual entry and exigent circumstances which justified defendant's warrantless arrest. We find no manifest error in the trial court's finding. Accordingly, we conclude that the trial court did not err in denying the defendant's motion to quash arrest and suppress his statement.

Both defendants argue that the trial court erred in excluding evidence of the victim's 1971 arrest for murder, 1972 conviction for possession of a gun and 1978 conviction for possession of narcotics. We disagree.

■ The latitude to be allowed in cross-examination of a witness rests largely in the discretion of the trial court, and its determination will not be disturbed absent an abuse of discretion which results in manifest prejudice to the defendant. (*People v. Kline* (1982), 92 Ill. 2d 490, 504, 442 N.E.2d 154, 160.) When the theory of self-defense is raised, the victim's aggressive and violent character is relevant to show who was the aggressor and the defendant may show it by appropriate evidence, regardless of when he learned it. (*People v. Lynch* (1984), 104 Ill. 2d 194, 200, 470 N.E.2d 1018, 1020.) However, evidence of a victim's mere arrest is inadmissible since it does not indicate whether the victim actually performed any of the acts charged. (*People v. Baer* (1976), 35 Ill. App. 3d 391, 396, 342 N.E.2d 177, 182.) In addition, the trial court has discretion to exclude the admission of evidence of convictions which are 10 or more years old or irrelevant to the issues raised at trial. *People v. Montgomery* (1971), 47 Ill. 2d 510, 516-19, 268 N.E.2d 695, 697-98.

■ In the present case, the trial court properly excluded evidence regarding the victim's 1971 arrest for murder since the victim was never convicted. The court also properly excluded the admission of evidence of the victim's convictions for firearm and narcotics possession because the convictions do not necessarily indicate a violent character. In addition, the court could have also excluded the admission of the

victim's 1972 conviction because it occurred more than 10 years before the trial in this matter. We therefore conclude that the trial court did not abuse its discretion in excluding evidence of the victim's prior arrest and convictions.

Defendant Bailey argues that the State failed to prove beyond a reasonable doubt that his theory of self-defense was unreasonable. We disagree.

The determination of whether a homicide is murder or justified as self-defense is for the trier of fact, and the decision will not be disturbed on review unless it is so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Greene* (1987), 160 Ill. App. 3d at 1096, 513 N.E.2d at 1096.) The use of force in defense of the person is justified where (1) force is threatened against the person; (2) the person threatened is not the aggressor; (3) the danger of harm is imminent; (4) the force threatened is unlawful; and (5) the person threatened actually believes that a danger exists, that the use of force is necessary and such beliefs are reasonable. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 221, 498 N.E.2d 547, 552-53; Ill. Rev. Stat. 1985, ch. 38, par. 7—1.) Self-defense is an affirmative defense based on satisfaction of the above elements. Once the issue is raised, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. (*People v. Greene*, 160 Ill. App. 3d 1089, 1096, 513 N.E.2d 1092, 1096.) However, the right of self-defense does not permit the pursuit and killing in retaliation or revenge of an initial aggressor after he retreats. *People v. Tirrell* (1980), 87 Ill. App. 3d 511, 517, 408 N.E.2d 1202, 1206; Ill. Rev. Stat. 1985, ch. 38, par. 7—4(c)(2).

In the present case, defendant testified that the victim initially struck him and that the two engaged in a fight. Defendant stated that after the victim and his brother retreated home, he and defendant Ellis followed them with baseball bats. He further testified that after he chased the victim, the victim turned around, threatened to kill him, and lunged in his direction. It is defendant's contention that he reasonably believed that he was acting in self-defense when he struck the victim in the head with a baseball bat several times after the victim lunged at him. However, the trial court found the defendant's contention unbelievable. The court specifically found that the fact that defendant chased the victim, who was unarmed, for two blocks before beating him in the head with a baseball bat contradicted the argument that he was acting in self-defense. Clearly, the evidence supports the trial court's decision to reject defendant's claim of self-defense. We therefore conclude that the trial court's decision finding defendant

guilty of murder was proper.

Defendant next argues that the trial court abused its discretion in sentencing him to serve 30 years in prison. We disagree.

Although a reviewing court has the power to reduce an excessive sentence (107 Ill. 2d R. 615(b)(4)), a sentence will not be disturbed absent an abuse of discretion. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344, 348.) The trial court is normally in the best position to determine an appropriate sentence and its decision regarding sentencing is entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Further, a reviewing court may not change or reduce a sentence on the ground that it is too severe unless it can be affirmatively demonstrated that the trial court relied on erroneous or improper evidence in imposing sentence. *People v. Leckrone* (1985), 134 Ill. App. 3d 978, 983, 481 N.E.2d 343, 347.

In the instant case, defendant was sentenced after the court heard evidence in aggravation and mitigation. In aggravation, the State argued that defendants should receive extended-term sentences due to the exceptional brutality of the crime. In mitigation, defense counsel argued that defendant was 27 years of age, with a wife, three children and no prior criminal record. After consideration of defendant's age, criminal background and the nature of the crime, the court felt that a sentence in excess of the minimum was justified. In sentencing the defendant to 30 years in prison, the court stated that it had not imposed an extended-term sentence due to defendant's rehabilitative potential, but on the other hand, it could not sentence the defendant to the minimum term either, due to the brutal nature of the crime. The court's findings indicate that the court properly considered defendant's rehabilitative potential when imposing sentence. In addition, the 30-year sentence is within the statutory range of 20 to 40 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(a).) Based on our reading of the record, we do not find that the trial court abused its discretion in sentencing defendant.

Accordingly, we affirm the judgment and sentence of the circuit court.

Affirmed.

FREEMAN, P.J., and McNAMARA, J.,* concur.

---

*Justice McNamara participated in this opinion prior to his assignment to the sixth division.