ANGENETTE LEONARDI, Plaintiff-Appellant, v. BRADLEY UNIVER-
SITY, Defendant-Appellee (Adam Sanders, Defendant).

Third District   No. 3—92—0805

Opinion filed December 13, 1993.—Rehearing denied January 11, 1994.

BRESLIN, J., dissenting.

Lindner, Speers & Reuland, P.C., of Aurora (George P. Lindner and John R. Felton, of counsel), for appellant.

Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle (T. Donald Henson, of counsel), for appellee.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff, Angenette Leonardi, appeals from an order of the circuit court of Peoria County which dismissed count II of her second amended complaint. The dismissed count of plaintiff's complaint was a negligence action against Bradley University (Bradley). Plaintiff alleged Bradley had a duty to take reasonable precautions to protect her from sexual assault. Plaintiff claims this duty is based upon a special relationship of business inviter-invitee which existed between her and Bradley.

Plaintiff raises two issues on appeal: (1) whether the trial court erred in dismissing her complaint against Bradley; and (2) whether a special relationship of business inviter-invitee existed between plaintiff and Bradley under the circumstances of the alleged sexual assault.

We affirm the trial court's dismissal of plaintiff's second amended complaint. Based upon the facts alleged by plaintiff, we do not find the existence of any business inviter-invitee relationship between plaintiff and Bradley at the time of the alleged sexual assault.

On November 14, 1991, plaintiff filed her initial complaint against Adam Sanders. The complaint alleged that Sanders, on or about September 13-14, 1991, "without cause or provocation, assaulted, battered, sexually harassed and raped plaintiff."

On January 10, 1992, an order was entered granting plaintiff leave to file an amended complaint naming Bradley as an additional party defendant. Plaintiff's first amended complaint contained the same factual allegations against Sanders. However, an additional

count II was added which made allegations of negligence against Bradley.

In count II of the first amended complaint, plaintiff alleged that, at the time of the alleged sexual assault, she was a student at Bradley and the rape occurred on Bradley's campus. Plaintiff also alleged there was a special relationship of business inviter-invitee which existed between plaintiff and Bradley at the time of the alleged sexual assault. She alleged that Bradley knew, through a study conducted by its psychology department, "that 20.2% of first-year women and 23% of the upper class women reported that while students at Bradley they were victims of attempted or perpetrated sexual assault."

Plaintiff alleged Bradley knew or should have known that it was reasonably foreseeable she would be the victim of a sexual assault while attending Bradley as a student. Plaintiff's first amended complaint further alleged Bradley failed to take any action to warn her or to take reasonable and necessary precautions to protect her from sexual assault. Plaintiff concluded she was raped as a direct and proximate result of Bradley's negligence.

On March 4, 1992, an order was entered on plaintiff's motion allowing the filing *instanter* of a second amended complaint. Plaintiff's second amended complaint expanded the factual allegations against Sanders. The factual allegations in count II against Bradley were identical to those alleged in the first amended complaint.

On March 13, 1992, Bradley filed a motion to dismiss count II of plaintiff's second amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). On April 6, 1992, Sanders also filed a motion to dismiss count I of the second amended complaint.

On August 27, 1992, the trial court granted both motions to dismiss. However, plaintiff was granted an additional 14 days to file a third amended complaint against Sanders. Count II of plaintiff's second amended complaint against Bradley was dismissed with prejudice. The trial court found, relying on *Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 514 N.E.2d 552, that Bradley had no duty to protect plaintiff from the criminal acts of third parties.

On September 8, 1992, plaintiff filed a third amended complaint against Sanders. In the third amended complaint, plaintiff alleged the sexual assault occurred at Sanders' fraternity house.

Plaintiff also filed on September 8, 1992, a motion to reconsider the trial court's order dismissing count II of the second amended complaint with prejudice. On October 13, 1992, the trial court denied plaintiff's motion to reconsider and found there was no reason to de-

lay an appeal of the order pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Plaintiff then filed a timely notice of appeal. We note Sanders is not a party to this appeal.

On appeal, plaintiff argues the trial court erred by improperly interpreting *Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 514 N.E.2d 552. Plaintiff contends the court in *Rabel* did not determine whether a business inviter-invitee relationship exists between a university and its students. We agree with plaintiff's analysis that *Rabel* did not discuss the business inviter-invitee relationship.

Plaintiff further argues that Bradley's motion to dismiss should not have been granted because the facts alleged in count II of her second amended complaint were sufficient to allege a special business inviter-invitee relationship. After reviewing the entire record on appeal, we disagree with plaintiff on this issue. Plaintiff points out that courts in jurisdictions other than Illinois have recognized that a business inviter-invitee relationship exists between a university and its students. However, we believe those cases do not support plaintiff's position in this appeal. Plaintiff is seeking reversal of the trial court's order based upon her contention that her allegations are sufficient to state a cause of action. Plaintiff has *not* claimed on appeal that she should have been allowed the opportunity to further amend her complaint. Also, the record is clear that no request was made before the trial court to further amend plaintiff's complaint.

In the case at hand, Bradley argues that *Rabel* conclusively stated there is no special relationship existing between a university and its students. Bradley also contends plaintiff's complaint was properly dismissed because it had no duty to protect plaintiff. We agree with Bradley's second argument that, based on the facts alleged, Bradley had no duty to protect plaintiff from the criminal acts which she alleged occurred in Sanders' fraternity house.

Initially, we must agree with plaintiff that *Rabel* did not review the precise issue raised here. In *Rabel,* the plaintiff was a female college student attending Illinois Wesleyan University. She received a telephone call from a male fraternity member who asked her to meet him at the lobby of her university dormitory. When she met him, he picked her up and ran out of the dormitory and through a gauntlet of other fraternity members who struck at him with bones. The fraternity member fell while carrying the plaintiff, and the plaintiff sustained severe head injuries. *Rabel,* 161 Ill. App. 3d at 350-51, 514 N.E.2d at 554.

In *Rabel,* the plaintiff sued the fraternity member, the fraternity and the university. The Fourth District Appellate Court affirmed the

trial court's dismissal of the plaintiff's complaint against the university. The *Rabel* court rejected the following arguments: (1) that the university had placed itself in a custodial relationship with its students and thus had a duty to protect its students from the actions of third parties (*Rabel*, 161 Ill. App. 3d at 361, 514 N.E.2d at 560-61); and (2) that the university had a duty based upon the university's role as landlord of the plaintiff's dormitory (*Rabel*, 161 Ill. App. 3d at 362-63, 514 N.E.2d at 561-62).

The plaintiff in *Rabel* did not argue that the university had any duty to its students based upon a business inviter-invitee relationship. Consequently, we agree with plaintiff that *Rabel* is not dispositive of the specific issue raised here. Here, the crucial issue is whether Bradley had a duty to protect plaintiff from the reasonably foreseeable criminal acts of third parties based on a special business inviter-invitee relationship alleged to exist between Bradley and plaintiff.

We agree with plaintiff that the trial court's reliance on *Rabel* was misplaced. However, just because the court's reliance on *Rabel* was misplaced does not mean that we must automatically reverse the order dismissing plaintiff's complaint. It is well settled that a court of review may sustain a trial court's judgment on any grounds supported by the record, regardless of whether the reason given by the trial court was correct. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502, 520 N.E.2d 37, 39; *Murray v. Board of Review* (1992), 237 Ill. App. 3d 792, 796, 604 N.E.2d 1040, 1043.) Here, we conclude that plaintiff failed to allege sufficient facts necessary to establish the existence of a business inviter-invitee relationship.

In an action for negligence, the plaintiff must set forth sufficient facts establishing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 215, 531 N.E.2d 1358, 1364.) The question of the existence of a duty is one of law, and, in determining whether a duty exists, the trial court considers whether a relationship existed between the parties which imposed a legal obligation upon one party for the other party's benefit. *Rowe*, 125 Ill. 2d at 215, 531 N.E.2d at 1364; *Ono v. Chicago Park District* (1992), 235 Ill. App. 3d 383, 387, 601 N.E.2d 1172, 1175.

"Generally, there is no duty requiring a landowner to protect others from criminal activity by third persons on his property absent a 'special relationship' between the parties." (*Rowe*, 125 Ill. 2d at 215-16, 531 N.E.2d at 1364.) One such special relationship recognized by

Illinois courts is that of business inviter and invitee. (*Rowe*, 125 Ill. 2d at 216, 531 N.E.2d at 1364.) Where this special relationship exists, a duty arises to protect against reasonably foreseeable criminal activity. *Ono*, 235 Ill. App. 3d at 387-88, 601 N.E.2d at 1176.

A person is a business invitee on the land of another if (1) the person enters by express or implied invitation; (2) the entry is connected with the owner's business or with an activity conducted by the owner on the land; and (3) the owner receives a benefit. *Ono*, 235 Ill. App. 3d at 387, 601 N.E.2d at 1176; *B.C. v. J.C. Penney Co.* (1990), 205 Ill. App. 3d 5, 9, 562 N.E.2d 533, 535.

Here, plaintiff contends the allegations of her complaint establish the existence of such a special relationship. Plaintiff argues that her allegations show (1) she entered upon the Bradley campus as a student at the express invitation of Bradley; (2) Bradley offers a college education to its students and she was there as a student to obtain a college education; and (3) Bradley received tuition paid by plaintiff.

While we might agree with plaintiff that a student can be a business invitee of a university while engaged in various activities conducted by the university, such as attending classes or participating in university-sponsored activities, we cannot agree that a special relationship exists here based upon the facts alleged by plaintiff.

Plaintiff filed her third amended complaint before the trial court ruled on her motion to reconsider the order dismissing count II of her second amended complaint. Generally, prior pleadings are superseded by amended pleadings. (*Hendrix v. Board of Education* (1990), 199 Ill. App. 3d 1, 3, 556 N.E.2d 578, 579; *Burdin v. Jefferson Trust & Savings Bank* (1971), 133 Ill. App. 2d 703, 708.) However, as plaintiff's third amended complaint was directed solely against Sanders, plaintiff's allegations against Bradley contained in her second amended complaint are still properly before us. Nevertheless, under certain circumstances, a reviewing court will consider all of the pleadings in the record when determining whether a motion to dismiss was properly granted. (*Hendrix*, 199 Ill. App. 3d at 3, 556 N.E.2d at 579; *Burdin*, 133 Ill. App. 2d at 708.) Here, the facts alleged in plaintiff's third amended complaint were properly before the trial court at the time it ruled on plaintiff's motion to reconsider. Under these circumstances, we conclude that we may properly consider plaintiff's third amended complaint in determining whether the trial court's ruling was correct.

■ The specific facts alleged by plaintiff in her third amended complaint state that the alleged sexual assault occurred at Sanders' fraternity house. The facts alleged in both the second and third amended complaints show the assault occurred during the late night

and early morning hours of September 13 and 14, 1991. There are *no* facts alleged in *either* complaint which show that plaintiff's location at the time of the assault was connected with any activity conducted or sponsored by Bradley or that Bradley received any benefit from her presence at the fraternity house. Based on these facts, we conclude that plaintiff failed to properly plead the factors necessary to meet the legal definition of a business invitee. (See *Ono*, 235 Ill. App. 3d at 387, 601 N.E.2d at 1176.) When the factors necessary for the status of a business invitee are not pleaded, no duty exists and the complaint is properly dismissed. See *B.C.*, 205 Ill. App. 3d at 9-11, 562 N.E.2d at 535-37.

The out-of-jurisdiction cases cited by plaintiff do not support her contention that a business inviter-invitee relationship existed in the instant case. Instead, these cases support our conclusion that no special relationship existed at the time of the alleged sexual assault.

In all of the out-of-jurisdiction cases cited, the plaintiffs were involved in activities clearly connected with the college or university. See *Peterson v. San Francisco Community College District* (1984), 36 Cal. 3d 799, 809, 685 P.2d 1193, 1198, 205 Cal. Rptr. 842, 847 (student who paid a fee to use the college's parking lot was a business invitee of the college when assaulted ascending a stairway in the parking lot); *Rawlings v. Angelo State University* (Tex. App. 1983), 648 S.W.2d 430, 431-32 (student was business invitee of the university when she tripped over a hose placed across a campus sidewalk approaching the university's library); *Brown v. North Carolina Wesleyan College, Inc.* (1983), 65 N.C. App. 579, 309 S.E.2d 701 (college cheerleader was a business invitee of the college when she was abducted from the college's campus following a basketball game); *Relyea v. State* (Fla. Dist. Ct. App. 1980), 385 So. 2d 1378, 1380-83 (two Florida Atlantic University students were business invitees of the university when assaulted proceeding to their car after attending a class at the university), *disapproved on other grounds, Avallone v. Board of County Commissioners* (Fla. 1986), 493 So. 2d 1002, 1005.

We additionally note there is no evidence the fraternity house was owned by Bradley. If the fraternity house was not owned by Bradley, Bradley could not have a duty to protect plaintiff. The law is clear that a business owner has no duty to protect a plaintiff when the plaintiff is no longer on the business owner's premises. (*Fitzpatrick v. Carde Lounge, Ltd.* (1992), 234 Ill. App. 3d 875, 879, 602 N.E.2d 19, 22; *Lewis v. Razzberries, Inc.* (1991), 222 Ill. App. 3d 843, 850, 584 N.E.2d 437, 441; *Badillo v. DeVivo* (1987), 161 Ill. App. 3d 596, 598-99, 515 N.E.2d 681, 683-84.) Accordingly, it has been held there is no

liability on the part of a college for noncurricular activities taking place on property not owned by the college. *Hartman v. Bethany College* (N.D. W. Va. 1991), 778 F. Supp. 286, 291.

For the reasons indicated, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

BARRY, J., concurs.

JUSTICE BRESLIN, dissenting:

Campus rape is a serious problem. A woman is more likely to be raped while she is at college than at any other time in her life.[1] More than one in four female students will be the victim of sexual assault, including rape and attempted rape, while at college.[2] No longer is it enough to shake our heads and mutter sympathetic platitudes. We must recognize that the relationship between a university and its students imposes upon the university a duty to warn its students of the risk of sexual assault on its campus. The majority of this court, however, declines to do so based on its conclusion that no business inviter-invitee relationship existed between the plaintiff in the case at bar and Bradley University.

The majority opinion holds that a business inviter-invitee relationship may exist between a university and its students but limits that relationship to activities which take place on the university's campus and are conducted or sponsored by the university. It concludes that the plaintiff has not alleged sufficient facts to establish such a relationship and further denies her the opportunity to replead. I cannot join in this ruling.

First, I take issue with the majority's conclusion that the plaintiff has failed to adequately allege that the rape occurred on the university's campus. It arrives at this conclusion after reviewing the *third* amended complaint, which was filed solely against Sanders. Although clearly improper, it was the only way the majority could avoid the plain language of the *second* amended complaint, addressed to Bradley: "said rape occurred on this defendant's campus."

---

[1] Steinberg, *Rape on College Campuses: Reform Through Title IX,* 18 J.C. & U.L. 39 (1991) (hereinafter Steinberg.)

[2] Steinberg, 18 J.C. & U.L. 39 (1991).

In support of its position, the majority cites *Hendrix v. Board of Education* (1990), 199 Ill. App. 3d 1, 556 N.E.2d 578, and *Burdin v. Jefferson Trust & Savings Bank* (1971), 133 Ill. App. 2d 703, 269 N.E.2d 340. However, neither of these cases stands for the proposition that the sufficiency of one pleading may be determined by examining another pleading.

It is axiomatic that a complaint for one cause of action will not contain all the elements necessary to plead a second cause of action. The plaintiff does not have to prove that Sanders raped her on Bradley's campus to prevail against Sanders. Therefore, she need not allege that fact in her complaint against him and the majority should not look to that complaint to determine whether the plaintiff has properly pled a cause of action against Bradley. The only proper way to judge the sufficiency of the second amended complaint is to examine the second amended complaint. No other pleading will do.

Further, the majority concludes that it must accept the more specific allegation of the location of the attack and yet it cites no authority for this conclusion. Nor does it show that the varying allegations are not reconcilable. If the attack occurred in the fraternity house (as alleged in the third amended complaint) *and* on the campus (as alleged in the second amended complaint), then is it not logical to conclude that the fraternity house is located on the campus? Just this question was posed during oral argument and the answer given was that *the fraternity house was indeed located on the Bradley campus.*

Second, the majority holds that the plaintiff has failed to allege facts sufficient to support the conclusion that a business inviter-invitee relationship existed.

The business inviter-invitee relationship consists of three elements: (1) the invitee must enter the premises of the inviter by express or implied invitation; (2) the plaintiff's entry must be connected with the owner's business or with an activity the owner conducts or permits to be conducted on its premises; and (3) there must be mutuality of benefit or a benefit to the owner. *Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 474 N.E.2d 920.

There appears to be no question that the plaintiff satisfied the first element by alleging that she was expressly invited onto the university's campus when she was offered admission. However, the majority concludes that the plaintiff has failed to allege that her presence in the fraternity house was connected to the university's business or an activity sponsored by the university or that it benefitted the university. In doing so, the majority ignores more than 70 years of precedent in Illinois law which provides that a person may be

classified an invitee if her presence is related to an activity conducted by the premises owner or *permitted to be conducted* by the owner and that the benefit of the plaintiff's presence need not run exclusively to the premises owner but may be a mutual benefit to both the owner and the invitee. See *Milauskis v. Terminal R.R. Association* (1919), 286 Ill. 547, 122 N.E. 78; *Drews v. Mason* (1961), 29 Ill. App. 2d 269, 172 N.E.2d 383; *Madrazo v. Michaels* (1971), 1 Ill. App. 3d 583, 274 N.E.2d 635; *Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 474 N.E.2d 720.

In the case at bar, the plaintiff has alleged that the attack occurred on the Bradley campus. The fact that it may also have occurred in a fraternity house is immaterial. The fraternity could not occupy a building on the campus without the permission of the university. By permitting the fraternity to occupy a building on its campus, the university was permitting the fraternity to conduct its activities on the campus. When the plaintiff went to the fraternity house, she was entering upon Bradley's premises in connection with an activity Bradley permitted to be conducted upon its land. Thus the plaintiff has sufficiently stated this element of a business-invitee relationship.

The majority's conclusion that the plaintiff's presence in the fraternity house must be a benefit to the university is not well taken. It is not her presence at the fraternity house that is important. It is her presence *on the campus*—on the university's premises—that provides a benefit to the university.

Thus, I would conclude that the plaintiff has alleged sufficient facts to establish a business inviter-invitee relationship. First, she was expressly invited onto the university's premies. Second, the university permits the activities of the fraternity to be conducted upon its premises. Third, the university benefitted from the plaintiff's presence on its campus.

However, even if the plaintiff has failed in some way to sufficiently allege a business inviter-invitee relationship, she should be allowed a chance to replead her cause of action.

The rule is clear and well settled that a dismissal with prejudice is proper only where *no set of facts* could be pled which would establish the existence of a duty. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224; *Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790.) The plaintiff's complaint against Bradley was dismissed because the trial court found *as a matter of law* that Bradley owed no duty to protect the plaintiff from the reasonably foreseeable criminal acts of third parties on its

campus. No amount of repleading was going to change that ruling. Asking for leave to amend her complaint would have been futile. Now this court has held that there may be circumstances which would establish the existence of a duty on the part of the university. Therefore, the plaintiff is entitled to an opportunity to replead her complaint to bring it into line with the court's requirements.

Since I would find that a special relationship existed between the plaintiff and the defendant, I would continue with the traditional duty analysis. The factors to be considered in that analysis include the foreseeability of harm, the likelihood of injury, the magnitude of guarding against the harm and the consequences of placing the burden on the defendant. *Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 514 N.E.2d 552.

When one in four women will be sexually assaulted during her college years, there can be no doubt that the risk of harm is foreseeable. For those universities and colleges that know of or allow the existence of fraternities on or near their campuses, the risk is even higher because statistics show that men who belong to fraternities are twice as likely to commit rape as men who are not members, and fraternity members are more likely to commit gang rape.[3] In the case at bar, the plaintiff has alleged that a study conducted by the defendant's own psychology department indicates that on Bradley's campus more than one out of every five women has been sexually assaulted. Thus the risk of sexual assault on the defendant's campus is foreseeable and the plaintiff has met the first factor in establishing a duty.

There also can be no doubt that the likelihood of injury is high. Gone are the days when a defendant could say, "I didn't hurt her; I only raped her." The act of rape itself constitutes an injury to the victim. (See *People v. Leckrone* (1985), 134 Ill. App. 3d 978, 984, 481 N.E.2d 343, 347 ("the crime of rape is among the most heinous and brutal of offenses").) Further, almost half of all rape victims suffer bruises, black eyes, cuts, scratches, or swelling. Almost one in seven suffers gunshot or knife wounds, broken bones, loss of teeth, internal injuries or loss of consciousness.[4] Women who are raped suffer from a medically verifiable psychiatric disorder called rape

---

[3]Steinberg, *Rape on College Campuses: Reform Through Title IX*, 18 J.C. & U.L. 39 (1991).

[4]Steinberg, 18 J.C. & U.L. 39 (1991).

trauma syndrome.[5] Other injuries include nightmares, anxiety reactions, impaired interpersonal relationships, depression, sexual dysfunction, shame, guilt and eating and sleeping disorders.[6] Moreover, the plaintiff in the case at bar has alleged that she suffered injury. Thus the second factor in the duty analysis has been met.

The magnitude of guarding against the risk and the consequences of placing the burden on the university are low. Colleges inundate their students with a vast amount of information regarding classes, housing, campus clubs and recreation. They also inform students of the best ways to protect their rooms, apartments, cars and bicycles from theft or vandalism. Surely a woman's physical and mental health deserves as much protection as her clock radio and her hair dryer. The burden of including data on the incidence of sexual assault along with the host of other information disseminated is slight.

None of this is to say that every claim of this type will have merit. As in every negligence action, the plaintiff has the burden of proving the standard of care and a breach thereof as well as proximate cause. Only if the plaintiff can prove all of the elements of a negligence cause of action should she recover against the university or college.

Each year millions of young women spend vast sums of money to receive a higher education. It is not outrageous or overly burdensome to require that the institutions which entice these women to their campuses and which profit enormously from having them as students warn these women of the risk of campus rape. I dissent.

---

[5]Steinberg, 18 J.C. & U.L. 39 (1991).

[6]Mantese, *Medical and Legal Aspects of Rape and Resistance,* 12 J. Legal Med. 59 (1991).