DAVID M. CHAPMAN, *Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.*

*Robert L. Bell* (of *Fredrickson, Maxey, Bell & Allison*), for appellant.

*Slade Gorton, Attorney General, Lloyd W. Peterson, Assistant,* and *Wallis W. Friel* (of *Irwin, Friel & Myklebust*), *Special Assistant,* for respondents.

GREEN, J.—Plaintiff, David M. Chapman, age 18, brought this action by guardian ad litem against the State of Washington, Washington State University and their Board of Regents for injuries suffered as a result of a trampoline

accident in Bohler Gymnasium on the WSU campus. From a jury verdict in favor of defendants, plaintiff appeals.

In the fall of 1967, plaintiff enrolled as a freshman at WSU, majoring in mechanical engineering. He had been an excellent student in high school and was adept in sports, having lettered in basketball, track and football. Plaintiff performed on the trampoline for the Wenatchee Youth Circus during his junior high school years and had become quite proficient.

To meet his physical education requirement at WSU, he voluntarily selected a gymnastics class over soccer or weight lifting. The gymnastics class was taught by John Shaw, 2 days each week between 2:10 p.m. and 3 p.m. It was usual for some students to remain after class to work on individual skills and perfect certain stunts. This was encouraged by the instructor. After class on December 11, 1967, about 3:15 p.m., plaintiff was using the large or goliath trampoline. One other student was spotting for him. As a safety precaution, the spotter watches the performer in the event the latter gets into trouble. If the performer starts to fall off the trampoline, the spotter tries to catch him and break his fall or push him back onto the trampoline. While plaintiff was attempting to perform a double-forward somersault, he lost his balance and fell off the trampoline onto the floor, landing on his head and shoulders. He sustained very serious permanent injuries.

At the time of injury, instructor Shaw was 30 to 40 feet from the trampoline area. He was assisting another student on the horizontal bars. In addition to Shaw, there were five students in the gym. At least one of those students was using the trampoline adjacent to plaintiff without a spotter.

First, plaintiff assigns error to the court's refusal to instruct the jury on the first phase of the doctrine of last clear chance.[1] It is plaintiff's position that reasonable care

[1] Plaintiff's proposed instruction No. 4 states: "If you find the plaintiff was guilty of contributory negligence which continued up to the time of the accident, but that the defendant through their employee, John Harold Shaw, Jr., actually saw the plaintiff in a position of peril

requires four spotters attend any performer on a trampoline; this precaution is taught to the students; instructor Shaw was present in the gym and immediately before the accident actually saw plaintiff on the trampoline with only one spotter; and, if Shaw had called and stopped the use of the trampoline until four spotters were obtained, the accident would have been avoided. Therefore, plaintiff argues, assuming his own contributory negligence, Shaw had the last clear chance to prevent the accident. It is claimed plaintiff was entitled to present this theory to the jury and these facts are sufficient to warrant the proposed first-phase instruction. We disagree.

■■ The first phase of last clear chance applies where the defendant actually sees the plaintiff's peril and should appreciate the danger but fails to exercise reasonable care to avoid injury. It is essential defendant actually see plaintiff's peril. In that circumstance, the defendant is liable although the plaintiff's negligence may have continued to the instant of the injury. *Leftridge v. Seattle*, 130 Wash. 541, 545, 228 P.2d 302 (1924); *Klouse v. Northern Pac. Ry.*, 50 Wn.2d 432, 436, 312 P.2d 647 (1957). In *Klouse*, at 436, the court said:

> However, in order to hold a defendant liable under this rule, it must appear that he had a clear chance to avoid the accident, not merely a possible chance; and a clear chance to avoid an accident involves the element of sufficient time to appreciate the peril of the party unable to extricate himself and to take the necessary steps to avoid injuring him. . . . As this court said in *Steen v. Hedstrom*, 189 Wash. 75, 63 P. (2d) 507 [1937], and in *Everest v. Riecken, supra* [30 Wn.2d 683, 193 P.2d 353 (1948)], . . .
> "Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury."

Whether a jury should be instructed on the issue of last

and thereafter had time and opportunity to avoid the accident by the exercise of reasonable care, but failed to do so, then, under the doctrine of last chance, notwithstanding the contributory negligence of the plaintiff, your verdict must be for the plaintiff."

clear chance is a question of law. *Radecki v. Adams*, 63 Wn.2d 535, 387 P.2d 974 (1964).

Shaw testified he remained in the gym after class, working with a student on the horizontal bars and was at that location when the accident occurred; he previously noticed some boys on the trampolines but "didn't really pay too much attention to the numbers", but "I did see the boys on the trampolines"; he "knew Dave [plaintiff] was on the goliath trampoline" and "Dave [plaintiff] had had the one spotter"; and he was not paying any particular attention to the boys because he was working with the fellow on the horizontal bar. He further testified he did not know the exercises the boys were doing on the trampoline and was unaware of any problems; the fact only one spotter was present "just did not click in his mind." The testimony shows plaintiff missed a double-forward somersault on a prior occasion and requested his spotter to watch out for him as he performed the next attempt. Shaw was not aware of this problem.

Before the first phase of last clear chance can apply, it is essential defendant actually see the plaintiff's peril. *Leftridge v. Seattle, supra, Klouse v. Northern Pac. Ry., supra.* It is clear under the evidence Shaw was unaware of any peril on the part of plaintiff. There is no evidence plaintiff was in fact in any peril when Shaw observed him. True, only one spotter was present; but, the evidence is replete with testimony that students performing routine trampoline stunts, with very little prior experience, can in the exercise of good judgment do it with only one spotter. Further, the testimony is uncontradicted that a student with the experience of plaintiff would in the exercise of reasonable supervisory care be permitted to perform a double-forward somersault with only one spotter. In any event, at the time of Shaw's observation, plaintiff had a better chance to avoid the injury than Shaw; in fact, he had the last chance because he could have gotten off the trampoline. In this situation, last clear chance does not apply, *Thompson v. Collins*, 139 Wash. 401, 247 P. 458 (1926);

*Brucker v. Matsen,* 18 Wn.2d 375, 139 P.2d 276 (1943); *Hawkins v. Palmer,* 29 Wn.2d 570, 188 P.2d 121 (1947). It was only after plaintiff began his last attempt and went out of balance that plaintiff was in a position of peril and at this point even if Shaw had seen plaintiff's peril, he did not have time to prevent the injury. In these circumstances it was proper for the trial court to refuse to instruct on the first phase of last clear chance.

Second, error is assigned to the court's failure to give proposed instruction No. 7:

> When a pupil attends an institution of public learning, he is subject to the rules and discipline of that institution and the protective custody of the teacher is substituted for that of the parent. As a correlative of this right on the part of the school district to enforce, as against the pupils, rules and regulations prescribed by the State Board of Education and the superintendent of public instruction, a duty is imposed by law on the school district to take all precautions to protect the pupils in its custody from dangers reasonably to be anticipated, among which dangers are included the dangers incurred involving athletic activities which are inherently dangerous, or likely to become dangerous if allowed to be engaged in without supervision. Failure to perform this duty is negligence.

The cases cited in support of this assignment of error involve actions against school districts for injuries to young children. *Tardiff v. Shoreline School Dist.,* 68 Wn.2d 164, 411 P.2d 889 (1966) (a child age 7 years); *McLeod v. Grant County School Dist. 128,* 42 Wn.2d 316, 255 P.2d 360 (1953) (a child age 12 years); *Rodriguez v. Seattle School Dist. 1,* 66 Wn.2d 51, 401 P.2d 326 (1965) (a minor child, age not stated); *Briscoe v. School Dist. 123,* 32 Wn.2d 353, 201 P.2d 697 (1949) (a child age 11 years); *Carabba v. Anacortes School Dist. 103,* 72 Wn.2d 939, 435 P.2d 936 (1967) (senior high school boy). These cases arrive at the conclusion a school district may be held liable for negligent supervision of students attending the public school based upon the concept the school stands in loco parentis to the child during the time the child is in its custody. The court has used the

abstract language of proposed instruction No. 7 in reasoning to this conclusion. The rule deduced from such reasoning is that the liability of school districts for the tortious acts or omissions of its officers, agents or servants shall be determined according to the normal rules of tort law. *McLeod v. Grant County School Dist. 128, supra; Briscoe v. School Dist. 123, supra.*

In the instant case, the court instructed the jury as to the precise acts of negligence charged against the defendants by an issues instruction as follows:

Plaintiff alleges, and the defendants deny, that the accident and the resulting personal injuries were proximately caused by the negligence of the defendants' employee acting within the scope of his employment, in that said employee instructor failed to:

1. Failed to properly supervise the activities of the plaintiff and others who were using the trampoline at the time;

2. Failed to provide a sufficient number of safety spotters at the trampoline on which plaintiff was working;

3. Failed to properly and fully instruct the members of plaintiff's gym class in the proper method of safety spotting for those using the trampoline;

4. Failed to provide safety padding on the floor area around the trampoline on which plaintiff was working;

5. Failed to exercise that degree of care and caution in supervising this activity in the gym at the time as a reasonably cautious and prudent instructor employed by the University should have exercised under the same or similar circumstances.

The court's instructions then proceeded to define proximate cause, burden of proof, negligence and contributory negligence in general terms. Further, the jury was instructed that plaintiff need not prove each and every act of negligence *charged* against defendants; recovery would be justified if the jury found by a fair preponderance of the evidence there is established one or more acts of negligence which was a proximate cause of the injuries and damages.

When the trial judge submitted to the jury the specific acts of negligence claimed by plaintiff, the jury was entitled to consider those contentions under negligence standards set out by instruction No. 6:

Negligence is the failure to exercise ordinary care. It is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances.

It is clear plaintiff's theory could be argued to the jury under the instructions given. The court told the jury they could consider plaintiff's specific claims of negligence under the standard of ordinary care and if it was found any one of the specific charges existed, they were justified in finding defendants negligent. Therefore, we do not believe error was committed in the refusal to give instruction No. 7.

Third, plaintiff assigns error to the refusal to give proposed instruction No. 8:

The duty of protection owed by the school district to the student is not satisfied by using care to delegate its performance to another but is satisfied if, and only if, the person to whom the work of protection is delegated is careful in giving the instruction. The duty of care in this instance is non-delegatable [sic] and applies to school sponsored activities even though the same takes place after regular school hours.

The substance of this instruction was covered by instruction No. 13.

Fourth, plaintiff assigns error to the court's refusal to give proposed instruction No. 9:

Under the law a student has the right to rely that his teacher (supervisor) is exercising reasonable care in supervising over him and permitting him to perform reasonably safe activities. The student is not barred from recovering merely because he knew or should have known the dangerous condition negligently created or maintained by his teacher. He is charged with contributory negligence or contributory fault only if his volun-

tary exposure to the risk is unreasonable under the circumstances.

In support of this proposed instruction, plaintiff cites *Siragusa v. Swedish Hosp.*, 60 Wn.2d 310, 373 P.2d 767 (1962). That case involved a master-servant relationship. No authority has been cited supporting the giving of the proposed instruction in the factual circumstances of this case. Moreover, there is no evidence plaintiff was relying at the time upon the instructor to assist or supervise him. There was no error in refusing to give this instruction.

Fifth, error is assigned to the failure to give plaintiff's proposed instructions No. 11 and 15 as follows:

Proposed instruction No. 11:

The mere encountering of a risk by doing something dangerous does not, legally speaking, constitute assumption of risk. It is only when the risk exists in spite of the exercise of due care or when the risk results from negligence which is obvious that it is assumed by the person injured. Where no contractional relation exists, one does not necessarily assume risk because he encounters known danger unless the hazard was so imminent that no reasonably prudent person would have taken the risk.

Proposed instruction No. 15:

Under the law of the State of Washington a student is never held to "assume the risk" of another's negligence or incompetence. Therefore, if you find that the defendants through their employee, John Harold Shaw, Jr., was negligent in respect to his duty to supervise and protect the plaintiff and this failure was the proximate cause of plaintiff's injury, then you shall find for the plaintiff and against the defendants.

The court gave the following instructions on assumption of risk to which no error has been assigned:

Instruction No. 9:

If plaintiff assumed the risk of harm from attempting to perform a double front somersault on the trampoline under the circumstances existing in this case, he may not recover damages for an injury resulting therefrom.

In order for plaintiff to have assumed such risk, he must have had actual knowledge of the particular danger

and an appreciation of the risk involved and the magnitude thereof, and must thereafter have voluntarily assumed such risk.

For a person to act voluntarily he must have freedom of choice. This freedom of choice must come from circumstances that provide him a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose himself to the danger in question.

In determining whether the plaintiff assumed such risk, you may consider his maturity, intelligence, experience and capacity, along with all the other surrounding circumstances as shown by the evidence.

Instruction No. 10:

The basis of assumption of risk is the plaintiff's consent to assume the risk and look out for himself. Therefore he will not be found, in the absence of an express agreement, to assume any risk unless he had knowledge of its potential danger and the risk is generally recognized as dangerous. This means that he must not only be aware of the facts that created the danger but also must appreciate the nature, character and extent which make it unreasonable. Thus even though the plaintiff might be aware of a potential danger arising from an activity he is engaged in it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk and it is not a proper defense to the action.

Plaintiff contends the proposed instructions were necessary to clarify the given instructions. In his brief plaintiff takes the position "the defense of assumption of the risk should not be presented to the jury without instructions clearly pointing out to the jury the necessity of plaintiff's knowing and voluntary assumption of a risk either evident to any reasonable person or evident to the plaintiff under the circumstances of the case." It is argued that proposed instruction No. 11 should have been given along with proposed instruction No. 9 to cover this point. It is contended proposed instruction No. 15 should have been given because plaintiff could not assume the risk of Shaw's negligent supervision under *Carabba v. Anacortes School Dist. 103*, 72 Wn.2d 939, 435 P.2d 936 (1967); and *Jay v. Walla Walla College*, 53 Wn.2d 590, 335 P.2d 458 (1959). We disagree.

The instructions given, to which no exception was taken, adequately covered the issues of plaintiff's voluntary assumption of risk. We do not believe *Carabba* or *Jay* apply.

In *Carabba*, plaintiff was injured when his opponent in a wrestling match obtained an illegal hold during the time the referee's attention was diverted to moving one of the wrestling mats. In that situation, it was held plaintiff by his voluntary participation in the match did not assume the risk of the referee's negligent lack of attention to the match. We do not have such a situation in the instant case.

Further, *Jay* does not support plaintiff. In that case, an explosion and fire occurred during an authorized chemistry experiment. Jay, a student, grabbed a fire extinguisher from the hallway and reentered the room to put out the fire. The extinguisher was empty. A second explosion occurred and flying fragments injured his eye. The court held volenti non fit injuria did not apply to bar recovery as a matter of law, submitting to the jury the issue of whether the existence of an emergency relieved Jay from the force of the rule. Such situation does not exist in the instant case. Proposed instructions No. 11 and 15 were properly refused.

Sixth, error is assigned to the refusal to give proposed instruction No. 16 to the effect that if defendants had a law, order or regulation governing the number of spotters present while a student was performing on a trampoline, defendants violated the same, and because such violation was the proximate cause of the injury, assumption of the risk would not apply. We find no error. The evidence does not support the giving of such instruction. Only during class time was it mandatory to have four spotters. After class, there was no fixed rule; the number of spotters, if any, depended upon the responsible nature of the performer, the degree of his skill and experience, and the nature of the stunt to be performed. Further, the evidence shows the performer during practice sessions had the responsibility of obtaining his own spotters. Since there was no fixed rule, the instruction was not applicable.

■ Seventh, error is assigned to the failure to give proposed instruction No. 3:

> In considering the alleged contributory negligence of the minor plaintiff, you are instructed that it is the duty of such minor to exercise only the same care that a reasonably prudent minor of the same age, intelligence and experience would exercise under the same or similar circumstances. If he fails to do so and such failure proximately causes his injuries, then he would be guilty of contributory negligence.

We find no error. A person of plaintiff's age, intelligence and experience is held to the exercise of the same judgment and discretion in caring for his own safety as one in more advanced years. *Colwell v. Nygaard,* 8 Wn.2d 462, 112 P.2d 838 (1941).

■ Finally, error is assigned to the denial of plaintiff's motion for judgment n.o.v. or a new trial. In support of this motion, plaintiff filed affidavits of four jurors. These affidavits reflect these jurors and five or six other jurors believed the instructions on voluntary assumption of the risk were confusing. After discussion among the jurors, the foreman advised the bailiff concerning their problem and asked that he advise the court they wanted further clarifying information. The bailiff informed the foreman the trial judge had returned to his home and was not available for that purpose and that they would have to decide the case on the instructions given. The affidavits further state that at no time did the court, bailiff or anyone else inform the jury they could have obtained clarifying instructions if they had demanded them. These four jurors contend that if they could have obtained this information they would have waited and not concurred in the verdict until the clarifying instructions had been given. All this court has in reviewing the trial judge's denial of the motion are the four affidavits just summarized. The statement of facts does not include the proceedings covering the posttrial motion. These affidavits do not indicate wherein the instructions were confusing nor the nature of the clarification requested. The statement of facts contains none of the proceedings surrounding

the receipt of the verdict; nor, does the statement of facts disclose the jury was polled. Further, there is nothing to indicate the foreman, prior to delivering the verdict to the court, made any request or gave any information to the judge concerning the confusion claimed in the affidavits. Additionally, no affidavit was filed by the foreman. No authority is cited to support plaintiff's assigned error, and the brief contains no argument in support of the assigned error except insofar as he urges it in support of his proposed clarifying instructions on voluntary assumption of the risk. The granting or denial of a motion for a new trial rests within the sound discretion of the trial judge. *State v. Lemieux*, 75 Wn.2d 89, 448 P.2d 943 (1968).

Based on the record before us, we find no abuse of discretion.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.