[No. 34783-7-I.   Division One.   May 22, 1995.]

JAMIE JOHNSON, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*

*Zenon Olbert* and *Montell Hester,* for appellant.

*Christine O. Gregoire, Attorney General,* and *Joseph S. Montecucco* and *David Wendel, Assistants,* for respondent.

BAKER, C.J. — Jamie Johnson was a first-year student at Washington State University (WSU) when she was abducted and raped late at night near her dormitory. She sues the

State of Washington, alleging WSU was negligent in failing to take reasonable steps to provide for her safety.

The State successfully moved for summary judgment of dismissal, arguing that the public duty doctrine bars the claim, no alleged act or omission by it could have been a proximate cause in fact of the rape, and the criminal act of the rapist was an intervening cause. We reverse, holding that WSU owed Johnson a duty of care based on her status as a student resident on campus.

## I

■ On appeal from a summary judgment we engage in the same inquiry as the trial court, viewing the evidence presented in the light most favorable to the nonmoving party.[1]

■ The existence of a duty is the threshold question in a negligence action, and is a question of law.[2] Once a duty is established, any issues of fact regarding breach of duty and whether that breach was a proximate cause of plaintiff's injuries are normally left for the factfinder.[3]

■ In addressing whether WSU owes a duty to its student residents, we must consider whether the public duty doctrine relieves WSU of any duty. Under that doctrine, governmental agencies are normally not liable for alleged breaches of a general duty of care owed to the public at large.[4] Liability may exist, however, if the agency has a special duty of care owed to a particular plaintiff.[5] Two of the situations which have been recognized to produce such a special duty of care are relied upon by Johnson in this case: (1) when the terms of a legislative enactment evidence an intent to identify and protect a particular and circumscribed class of persons, and (2) where a special relationship exists between the

---

[1]*Lauritzen v. Lauritzen*, 74 Wn. App. 432, 437-38, 874 P.2d 861, *review denied*, 125 Wn.2d 1006 (1994).

[2]*Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994); *Lauritzen*, 74 Wn. App. at 438.

[3]*See McLeod v. Grant Cy. Sch. Dist. 128*, 42 Wn.2d 316, 324-25, 255 P.2d 360 (1953).

[4]*See Bailey v. Forks*, 108 Wn.2d 262, 265, 737 P.2d 1257, 753 P.2d 523 (1987).

[5]*Bailey*, 108 Wn.2d at 262.

agency and any reasonably foreseeable plaintiff such that the plaintiff is in a position different from the general public and the plaintiff relies on assurances explicitly given by the agency.[6]

## Legislative Intent

Johnson argues that a special duty to her as a freshman resident student was created by two enactments: the administrative requirement that she live in organized student housing for her first year of college,[7] and the legislative authorization to WSU to establish its own police force.[8]

■■ For legislation to create a special duty to individuals, the legislation must intend to identify and protect a particular and circumscribed class of persons.[9] The legislative intent must be clearly expressed within the provision.[10] Neither of the referenced enactments contains any express purpose to identify and protect WSU students.

Johnson asks us to imply legislative intent, presumably because the purpose of having first-year students live in organized student housing and authorizing a university police force must be to protect their personal safety. However, for this court to imply the necessary legislative intent and recognize a special duty created by these codes, we would have to broaden, if not redefine, the existing legislative intent exception. The major public policy considerations bearing on this issue cause us to decline the invitation in the absence of more explicit legislative direction or reconsideration of the public duty doctrine by our Supreme Court.

[6]*Bailey*, 108 Wn.2d at 268. We note that the court in *Bailey* stated that the assurances necessary to this "special relationship" exception to the public duty doctrine could also be "inherent in a duty vested in a governmental entity". As noted later in this opinion, however, a later Supreme Court opinion specifically held that a governmental duty cannot arise from implied assurances. *Honcoop v. State*, 111 Wn.2d 182, 759 P.2d 1188 (1988).

[7]WAC 504-24-030.

[8]RCW 28B.10.550.

[9]*Taylor v. Stevens Cy.*, 111 Wn.2d 159, 164, 759 P.2d 447 (1988); *Baerlein v. State*, 92 Wn.2d 229, 231, 595 P.2d 930 (1979); *see also Pepper v. J.J. Welcome Constr. Co.*, 73 Wn. App. 523, 532-33, 871 P.2d 601, *review denied*, 124 Wn.2d 1029 (1994).

[10]*See, e.g., Taylor*, 111 Wn.2d at 164-65; *Baerlein*, 92 Wn.2d at 232; *Pepper*, 73 Wn. App. at 532.

Special Relationship

■ As usually described, the special relationship exception to the public duty doctrine is equally inapplicable to this case. A special relationship is created by direct contact or privity with a public official or agency accompanied by express assurances made by the public official upon which the plaintiff reasonably relies. An example of this type of situation is when a victim makes calls to 911 and relies upon express assurances that police are in route to the crime scene.[11]

No express assurances are relied on in the present case. Johnson argues that an implied assurance can create a special relationship. The authority Johnson relies on has been overruled, however, so we reject this argument.[12]

Special School-Student Relationship

Johnson next argues that her status as a student creates a special duty of care to her. She cites several cases which discuss the duty of care a school district owes to children who are of an age where school attendance is mandatory. These cases hold that teachers are substitute custodians for parents (in loco parentis and owe a duty of care to children.[13]

■ Johnson argues that the in loco parentis doctrine should apply to college students as well. However, the two classes of students are distinctly different. College attendance is not mandatory. College students are adults and generally are not in the protective custody of their parents. The policy reasons underlying the applicability of the doctrine do not exist for college students, and we see no valid reason to extend the same special status to such students.[14]

---

[11]*Chambers-Castanes v. King Cy.*, 100 Wn.2d 275, 286, 669 P.2d 451, 39 A.L.R.4th 671 (1983); *see also Meaney v. Dodd*, 111 Wn.2d 174, 178-79, 759 P.2d 455 (1988).

[12]"[A] governmental duty cannot arise from implied assurances." *Honcoop v. State*, 111 Wn.2d 182, 759 P.2d 1188 (1988); *see also Cameron v. Janssen Bros. Nurseries, Ltd.*, 7 F.3d 821, 827 (9th Cir. 1993) (recognizing that Washington's special relationship rule requires *express* assurances).

[13]*See McLeod*, 42 Wn.2d at 319-20; *Peck v. Siau*, 65 Wn. App. 285, 292, 827 P.2d 1108, *review denied*, 120 Wn.2d 1005 (1992).

[14]*See, e.g., Chapman v. State*, 6 Wn. App. 316, 317, 320-22, 492 P.2d 607 (1972) (finding no error in court's refusal to instruct jury regarding special duty of care

Several jurisdictions have recently rejected the notion of a special duty of care owed by a university to its students merely because of their status as students.[15] After examining the reasoning of several other jurisdictions, the Kansas Supreme Court held that

> the university-student relationship does not in and of itself impose a duty upon universities to protect students from the actions of fellow students or third parties. The in loco parentis doctrine is outmoded and inconsistent with the reality of contemporary collegiate life.[16]

We agree, and hold that no special duty of care arises merely from Johnson's status as a student.

### Business Invitee

Johnson also asserts that WSU, as possessor of the WSU campus, owes her a duty to use reasonable care for her safety because she is a business invitee on campus. The State contends that a student's status is that of a licensee while on public areas of the campus.

Washington recognizes three levels of duties owed generally by land possessors to persons on their land based on whether the person is an invitee, licensee, or trespasser.[17] The highest of the three levels of duty is owed to an invitee, who may be either a business visitor or a public invitee. A business visitor is invited on the land of the possessor for the business of the possessor. A public invitee is invited, as a member of the public, to use the possessor's land.[18]

---

toward students where plaintiff was a freshman at WSU, noting that plaintiff's theory for the instruction applied to actions against school districts for injuries to young children).

[15]*See, e.g., Furek v. University of Delaware*, 594 A.2d 506, 516-19 (Del. 1991) (rejecting a custodial relationship between university and student, noting that most jurisdictions have abandoned the in loco parentis doctrine's application to college students); *Nero v. Kansas State Univ.*, 253 Kan. 567, 572-81, 861 P.2d 768, 773-78 (1993).

[16]*Nero*, at 580.

[17]*Younce v. Ferguson*, 106 Wn.2d 658, 662, 666, 724 P.2d 991 (1986).

[18]*See Younce*, 106 Wn.2d at 667 (quoting Restatement (Second) of Torts § 332 (1965)).

■ The duty owed to an invitee is that of reasonable care for the invitee's personal safety. The land possessor must exercise reasonable care with respect to conditions on the premises which pose an unreasonable risk of harm.[19] This includes a duty to ascertain, as well as warn of, dangerous conditions.[20]

■ Several other jurisdictions have held that university students occupy the status of invitees while on university premises.[21] While we find such cases persuasive, it is unnecessary in this case to adopt a broad rule that university students are entitled to invitee status for all purposes while on university property. It is sufficient here to hold that Johnson is entitled to the status of an invitee because she was an on-campus student resident who was attempting to gain access to her university dormitory at the time she was attacked. Under these circumstances, the relationship of this student to the university was sufficiently analogous to that of an invitee to justify imposing an equivalent duty of care upon the university.[22]

## II

■ We next consider whether Johnson has raised a material issue of fact whether the university breached its duty to exercise reasonable care for the personal safety of its

[19]*See Ford v. Red Lion Inns*, 67 Wn. App. 766, 770-71, 840 P.2d 198 (1992), *review denied*, 120 Wn.2d 1029 (1993).

[20]*Swanson v. McKain*, 59 Wn. App. 303, 310 n.4, 796 P.2d 1291 (1990), *review denied*, 116 Wn.2d 1007 (1991).

[21]*See, e.g., Furek*, 594 A.2d at 520; *Peterson v. San Francisco Comm'ty College Dist.*, 36 Cal. 3d 799, 808-09, 685 P.2d 1193, 1198, 205 Cal. Rptr. 842 (1984) (citing other jurisdictions, recognizing that the concept of a student as an invitee is "not a novel proposition"); *Jesik v. Maricopa Cy. Comm'ty College Dist.*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980); *Isaacson v. Husson College*, 297 A.2d 98, 102-03 (Me. 1972).

[22]Contrast *Leonardi v. Bradley Univ.*, 253 Ill. App. 3d 685, 625 N.E.2d 431, 435 (1993) (finding student was not an invitee when visiting a campus fraternity in the early morning hours, because student did not show either that her presence was connected with business of the college or that the college received any benefit from her presence at the fraternity house at that hour), *appeal denied*, 633 N.E.2d 6 (Ill. 1994).

dormitory residents, and whether such breach was a cause of Johnson's injuries. The issue of proximate cause is generally left for the trier of fact.[23] Further, "[s]ince the nonmoving party is given the benefit of any factual doubt on a summary judgment motion, it is seldom granted on the basis of the unreasonableness of alleged facts." *Hartley*, 103 Wn.2d at 777 (finding that although affiant's statements may lack credibility, reasonable minds could differ, precluding summary judgment).

Johnson produced the declarations of an expert who suggested particular security measures which he opined could have prevented the rape. We disagree with the State's characterization of the declarations as merely conclusory opinions. The expert did state the factual basis for his opinions, and such evidence raises sufficient factual issues to defeat WSU's motion for summary judgment. WSU's additional arguments that the expert's opinions would impose unreasonable burdens on the university or that his suggested measures would not have prevented this assault from occurring are more properly addressed to the trier of fact.[24]

## III

Finally, the State argues that the criminal act of the rapist was an intervening cause which exonerates WSU from any liability. A criminal act by a third party is not an intervening cause if it was reasonably foreseeable.[25] A criminal act may be considered foreseeable if the actual harm fell within a general field of danger which should have been anticipated. The court may determine a criminal act is unforeseeable as a matter of law only if the occurrence is so highly extraordinary or improbable as to be wholly beyond the range of expectability. Otherwise, the foreseeability of the criminal act is a question for the trier of fact.[26]

---

[23]*State v. Dennison*, 115 Wn.2d 609, 624, 801 P.2d 193 (1990); *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985).

[24]We note that the potential issue of *legal* proximate cause has not been properly raised for our consideration.

[25]*McLeod*, 42 Wn.2d at 321; *J.N. v. Bellingham Sch. Dist. 501*, 74 Wn. App. 49, 58-59, 871 P.2d 1106 (1994).

[26]*McLeod*, 42 Wn.2d at 321-23.

WSU relies upon *Brown v. North Carolina Wesleyan College, Inc.*, 65 N.C. App. 579, 309 S.E.2d 701 (1983), wherein the court found that only scattered incidents of crime, which in that case were less than one per year, were insufficient to raise a triable issue of foreseeability.[27] The *Brown* court acknowledged that a college can be liable for a criminal assault by a third party upon one of its students if it was foreseeable, but indicated that a repeated course of criminal activity would need to be shown. In *Relyea v. State*, 385 So. 2d 1378 (Fla. Dist. Ct. App. 1980), also cited by WSU, the court noted that if a criminal attack is reasonably foreseeable, a duty may arise based upon the landowner/invitee relationship.[28] In this case, Johnson has presented evidence of numerous crimes taking place on campus each year. This evidence prevents a ruling that this crime was unforeseeable as a matter of law.[29]

Reversed.

AGID, J., and PEKELIS, J. Pro Tem., concur.

Review denied at 127 Wn.2d 1020 (1995).

---

[27]*Brown*, at 583.

[28]*Relyea*, 385 So. 2d at 1382-83 (finding no foreseeability issue where no serious crime had been committed on campus since 1963).

[29]Indeed, one of the arguments raised by WSU is that it had no duty to warn Johnson of the danger of potential sexual assaults on women during hours of darkness because such danger is a well known fact of modern life.