[No. 50710-9-I. Division One. November 24, 2003.]

NATHALIE J. FUENTES, ET AL., *Appellants*, v. THE PORT OF SEATTLE, *Respondent*.

*Philip A. Talmadge* and *Paul G. Eklund* (of *Talmadge Law Group, P.L.L.C.*) and *Gordon B. Anderson, Jr.* (of *Law Offices of Gordon B. Anderson, Jr.*), for appellants.

*Craig R. Watson*, for respondent.

APPELWICK, J. — Nathalie Fuentes, while waiting in her car at the Seattle-Tacoma (SeaTac) International Airport's pick-up drive for passengers, was injured when her car was carjacked. The carjacker was fleeing Port of Seattle police after they caught him breaking into a car in the airport parking garage. Fuentes sued the Port of Seattle, alleging it failed to provide adequate police and/or security for the safety of invitees at the airport. The trial court granted summary judgment for the Port of Seattle. Fuentes appeals. We affirm.

## FACTS

Nathalie Fuentes was waiting in her parked car at the lower pick-up drive at SeaTac Airport at approximately 10:00 P.M. on February 21, 1998. At that time, two plainclothes Port of Seattle (Port) police officers, Officer Andrew McCurdy and Officer Greg Watts, were patrolling the airport parking garage nearby. Eleven other Port of Seattle police officers were scheduled to patrol the airport on that evening also. Officers McCurdy and Watts were members of a special "proactive" team assembled several months earlier to interdict crime in the airport garage.

On the evening of February 21, 1998, Kail Erickson was prowling the garage area. At 10:13 P.M., Officer McCurdy responded to a radio call alerting him to a car prowler on the fifth floor of the garage. Several minutes later, on the garage's sixth floor, Officer McCurdy approached Erickson attempting to break into a truck. Erickson ran when he

realized Officer McCurdy was watching him. Officer Mc-Curdy, Watts, and a third officer continued to pursue Erickson, joined by a fourth officer as they reached the third floor. Officer Watts observed Erickson leap six to eight feet down from the garage to the street level pick-up drive. He followed as Erickson crossed lanes of moving traffic and then entered Fuentes' car through the passenger door.

Officer Watts shouted at Fuentes not to drive away, pounding on her window to get her attention. Erickson punched Fuentes in the mouth, depressed the accelerator, and the car moved towards the exit with Fuentes still in the driver's seat. Officer Watts pursued Fuentes' car in a car borrowed from a nearby civilian driver. An officer in a patrol car whom Officer Watts had radioed also pursued Fuentes' car. Neither officer was able to track Fuentes' car. Other search units were equally unsuccessful at locating Fuentes' car. At about 10:40 P.M., a radio dispatch reported that Fuentes had called from an Ajax parking lot, where Erickson had thrown her out of the car. The police were subsequently able to identify and arrest Erickson.

In 2001, Fuentes filed an action against the Port of Seattle for injuries she suffered in the carjacking, alleging that the Port was negligent, had failed to provide adequate police and/or security for the safety of invitees at the airport, and that the Port's careless failure was the cause of her injuries.

The trial court granted the Port summary judgment. Fuentes appeals.

## ANALYSIS

I. Standard of Review

■ We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court. *Youngblood v. Schireman*, 53 Wn. App. 95, 99, 765 P.2d 1312 (1988). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "The facts and all reasonable inferences therefrom must be considered in the light most favorable to the nonmoving party." *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 197-98, 943 P.2d 286 (1997).

### Negligence Standard

■ ■ A cause of action for negligence requires the plaintiff to establish (1) the existence of a duty to the plaintiff, (2) breach of that duty, (3) resulting injury, and (4) proximate cause between the breach and the injury. *Christen v. Lee*, 113 Wn.2d 479, 488, 780 P.2d 1307 (1989). The threshold determination of whether the defendant owes a duty to the plaintiff is a question of law. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). "Once a duty is established, any issues of fact regarding breach of duty and whether breach was a proximate cause of plaintiff's injuries are normally left for the fact finder." *Johnson v. State*, 77 Wn. App. 934, 937, 894 P.2d 1366 (1995). However, if a criminal occurrence is so highly extraordinary or improbable as to be wholly beyond the range of expectability, a court may find it unforeseeable as a matter of law. *Johnson*, 77 Wn. App. at 942.

### Duty

The general rule in Washington is that a person owes no duty to prevent criminal harm to third persons. *Hutchins*, 116 Wn.2d at 220. Our Supreme Court tempered this rule, however, in *Nivens*, where it held that "a business owes a duty to its invitees to protect them from imminent criminal harm and reasonably foreseeable criminal conduct by third persons." *Nivens*, 133 Wn.2d at 205.

### II. Invitee or Licensee

The parties dispute the duty of care the Port owed to Fuentes. The Port asserts that the trial court erred when it determined that Fuentes was an invitee. The Port argues

that Fuentes was a licensee and, therefore, was owed only an intermediate duty of care.

■ ■ "The legal duty owed by a landowner to a person entering the premises depends on whether the entrant falls under the common law category of a trespasser, licensee, or invitee." *Iwai v. State*, 129 Wn.2d 84, 90-91, 915 P.2d 1089 (1996). "The highest of the[se] three levels of duty is owed to an invitee, who may be either a business visitor or a public invitee." *Johnson*, 77 Wn. App. at 940. " 'A business [invitee] is [one] who is invited to enter or remain on land for [the] purpose directly or indirectly connected with business dealings with the possessor of the land.' " *Younce v. Ferguson*, 106 Wn.2d 658, 667, 724 P.2d 991 (1986) (quoting RESTATEMENT (SECOND) OF TORTS § 332 (1965)). "The duty owed to an invitee is that of reasonable care for the invitee's personal safety." *Johnson*, 77 Wn. App. at 941. "The land possessor must exercise reasonable care with respect to conditions on the premises which pose an unreasonable risk of harm." *Johnson*, 77 Wn. App. at 941.

Fuentes was at the airport to pick up passengers disembarking from an airplane. Thus, although she herself was not an airline passenger, her purpose for being at the pick-up drive was connected to airport business. The Port of Seattle provided the pick-up drive, where Fuentes was at the time of the carjacking, for the specific purpose for which she was there. The record does not support the Port's assertion that Fuentes was a licensee because she exceeded the Port's invitation by remaining too long on the pick-up drive. The trial court did not err in finding that Fuentes was entitled to the status of an invitee. Thus, the Port owed a duty of reasonable care for Fuentes' safety.

III. Foreseeability

Fuentes asserts that genuine issues of material fact exist which should have precluded summary judgment on the issue of foreseeability.

■■■ A business invitee is owed a duty of reasonable care for "reasonably foreseeable criminal conduct by third per-

sons." *Nivens*, 133 Wn.2d at 205. "No duty arises unless the harm to the invitee . . . is foreseeable." *Nivens*, 133 Wn.2d at 205. While determination of foreseeability is usually left for jury determination, if the damage complained of falls entirely outside the general threat of harm that the plaintiff claims makes a party's conduct negligent, there is no liability. *McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 318, 255 P.2d 360 (1953).

Fuentes offers no evidence that the Port knew of carjackings at the airport pick-up drive in the past. Instead, to support her assertion that Erickson's carjacking was foreseeable, Fuentes marshals evidence of criminal activity in the SeaTac garage provided for suit against the Port by an airport patron, Soheila Motamed, who had been assaulted in the garage in December 1996.[1] In that case, Motamed alleged that the Port was on notice of criminal activity in the garage and that police patrols of that facility were inadequate. To support Motamed's claim, she presented as evidence a 1995 report stating that as of 1994, "a passenger at Seattle-Tacoma International Airport is more likely to be victim of a crime tha[n] at any other comparable airport in the United States" and declarations from several police officers that the garage had a car prowl problem.

Even if the Motamed assault had established a pattern of violent crimes in the airport garage, that would not be dispositive of a pattern of crime at the airport pick-up drive. The kind of knowledge required before a duty to protect arises is knowledge from past experience that there is a likelihood of conduct which poses a danger to the safety of patrons. *Nivens*, 133 Wn.2d at 204. Car prowlers working the unoccupied cars parked in the airport garage does not create foreseeability of kidnapping or carjackings of occupied cars at the pick-up drive.

A history of car prowls in the SeaTac Airport garage does not establish foreseeability of a carjacking at the airport's passenger pick-up drive. Fuentes also provides 1997 and

[1] *Motamed v. Port of Seattle*, No. 97-2-30521-7 (King County Super. Ct.).

1998 crime statistics documenting crimes at the SeaTac Airport, but those statistics disclose neither violent crimes at the pick-up drive nor carjackings anywhere on the airport grounds. Erickson's carjacking of Fuentes' car was so highly improbable as to be beyond the range of expectability. We find that Erickson's carjacking of Fuentes' car was unforeseeable as a matter of law. Accordingly, the Port owed no duty to Fuentes.

IV. Public Duty Doctrine

The parties dispute whether the public duty doctrine applies and thus bars the Port's liability. Having decided the risk was unforeseeable, we do not need to address the public duty doctrine.

We affirm.

BAKER and AGID, JJ., concur.

Review denied at 152 Wn.2d 1008 (2004).