# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| OLIVIA BROWN, individually and as Personal Representative of the ESTATE OF DAQUAN FOSTER; and DAQUAN FOSTER, a minor child, | No.  56400-9-II |
| Petitioners, | |
| v. | |
| LAKEMONT CORPORATION, a Washington corporation d/b/a LATITUDE 84; JEAN K LLC, a Washington limited liability company; CHONG YI, an individual; CHIN YI, an individual, | UNPUBLISHED OPINION |
| Respondents, | |
| DOES 1 through 10, | |
| Defendants. | |

CRUSER, A.C.J. — Daquan Foster and Olivia Brown visited the bar Latitude 84. After they left, tensions escalated in the parking lot with another bar patron, and this led to the fatal shooting of Foster. Brown filed a wrongful death action against the bar, its owners, and its commercial landlord, Jean K LLC. Jean K LLC moved for summary judgment, arguing that it did not owe a duty to Foster or Brown at the time of the shooting because they were in an adjacent parking lot

not owned by Jean K LLC. The trial court granted Jean K LLC's motion and denied Brown's motion for reconsideration. This case is before us on discretionary review.

We hold that Jean K LLC held open the adjacent parking lot to its business invitees as a means of ingress and egress and, therefore, Jean K LLC's duty to protect against reasonably foreseeable criminal conduct extended to the adjacent parking lot. Accordingly, we reverse the trial court's order denying Brown's motion for reconsideration and order granting summary judgment to Jean K LLC to the extent the court based its order on the conclusion that Jean K LLC did not owe a duty to its business invitees while they were in the adjacent parking lot.

FACTS

I. BACKGROUND

Jean K LLC owns a building on South Hosmer Street in Tacoma, Washington. Its tenants in this building include a Subway, a T-Mobile, and a bar named Latitude 84. Jean K LLC also owns the parking lot in front of the building, and there is a coffee stand in the parking lot. Although Jean K LLC does not own the adjacent building and parking lot, Latitude 84 customers would often use the adjacent parking lot, which extends continuously from Jean K LLC's parking lot. There is a gas station on the other side of the adjacent building and parking lot.

In October 2017, Foster and Brown attended Latitude 84 with some friends. Inside the bar, the group felt that there was a gang presence, and they specifically felt taunted by patrons identified as Randy Donaldson and Marshall Wilson, and the group they were with. No fights broke out inside of the bar.

Foster and Brown left the bar shortly before it closed for the night. Outside, Wilson was at his car, which was stopped in front of the building, facing toward Latitude 84. As Foster and Brown

walked away from Latitude 84 toward their car parked at the gas station, Wilson began yelling at Foster. Foster turned around and walked back toward Wilson, and the two exchanged blows. When Foster hit Wilson, Wilson fell to the ground, and Foster and Brown continued to walk away. Donaldson then appeared and started shooting at the couple, and then Wilson also began shooting.

Foster collapsed near the gas station, and all shell casings were found in the parking lot adjacent to Jean K LLC's lot. Foster and Brown were transported to the hospital in separate ambulances. In the emergency room, while receiving treatment for injuries to her thumb, Brown was notified that Foster passed away.

## II. PROCEDURE

Brown brought an action for wrongful death and personal injuries on behalf of herself, Foster's estate, and their minor son, alleging negligence by Latitude 84, the owners of Latitude 84, and Jean K LLC.

Jean K LLC moved for summary judgment dismissal of the claims brought against it, arguing that it did not possess or control Latitude 84 or the adjacent property where the shooting occurred. It further argued that it did not owe a duty to Foster or Brown because they were not on Jean K LLC's property at the time of the shooting and because the shooting was not foreseeable. In response, Brown argued that she and Foster were business invitees of Jean K LLC because it possessed and controlled the common area—the parking lot—where the events leading to the shooting took place. Brown also argued that the shooting was reasonably foreseeable to Jean K LLC due to a history of violent activity at Latitude 84.

The trial court granted Jean K LLC's motion for summary judgment. The court's order states:

> 1.     Plaintiffs and Jean K LLC were not in a special relationship at the time of the shooting. Court saw no evidence that shooting occurred on Jean K [p]roperty.
>
> 2.     Jean K LLC did not breach any duty owed to Plaintiffs.

Clerk's Papers (CP) at 663.

Brown moved for reconsideration, arguing, in part, that newly discovered evidence supported the conclusion that Foster and Brown were business invitees of Jean K LLC even in the adjacent parking lot because a license agreement granted reciprocal use of the parking lots for customers. Bong Kim, the owner of the building next door, testified that her tenants were unhappy because Latitude 84 customers were parking in her parking lot, in front of the other businesses. She explained that she complained to Jean K LLC's owner, Dong Kim, and that his lawyer sent her a letter stating that the license agreement allowed shared use of the parking lot. The agreement provides:

> D.     The parties desire to enter into a License for access to and use of an ingress/egress access driveway ("Access") between the Properties, so as to allow reasonable vehicular access between the two parking lots. The purpose of such a License is to enhance the customer flow between the Properties.
>
> . . . .
>
> This license also grants reciprocal use of the respective parties' parking lots and any ingress/egress from either Property to the main roads (Hosmer St. and 84th St.).

CP at 706-07. The trial court denied Brown's motion for reconsideration.

Brown sought discretionary review of the trial court's orders granting summary judgment to Jean K LLC and denying her motion for reconsideration. This court granted review on the issue of whether Jean K LLC owed a duty to Brown and Foster as business invitees after they left Jean K LLC's property.

4

ANALYSIS

I. STANDARD OF REVIEW

We review a summary judgment order de novo, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In addition, we review a trial court's denial of a motion for reconsideration "to determine if the trial court's decision is manifestly unreasonable or based on untenable grounds." *Martini v. Post*, 178 Wn. App. 153, 161, 313 P.3d 473 (2013).

The issue before us on discretionary review is whether Jean K LLC owed a duty to Brown and Foster as business invitees after they left Jean K LLC's property and entered the adjacent parking lot. Because we hold that the trial court's denial of Brown's motion for reconsideration was improper because the additional evidence presented—the license agreement—shows that Jean K LLC's obligations to business invitees extends to the adjacent parking lot, we only review the trial court's order on summary judgment to the extent that it concluded Jean K LLC did not owe a duty to Foster and Brown when they moved into the adjacent parking lot.

II. DUTY OF CARE

Brown argues that she and Foster were business invitees of Jean K LLC "at all relevant times" and that Jean K LLC, therefore, owed them a duty to prevent them from the reasonably foreseeable criminal conduct that led to Foster's death. Br. of Appellant at 23. Specifically, Brown argues that she and Foster retained their status as business invitees when they were shot in the

adjacent parking lot because the shooting was a continuation of the assault that began on Jean K LLC's property or, alternatively, because Jean K LLC extended its business activities onto the adjacent property. Jean K LLC argues that Brown and Foster were not business invitees of Jean K LLC at the time of the shooting because they were not on its property. We hold that Brown and Foster were entitled to protection from third party criminal conduct as business invitees when they were shot in the adjacent parking lot.

A. LEGAL PRINCIPLES

To prevail in a wrongful death action based on negligence, the plaintiff must establish four elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) a resulting injury, and (4) the breach proximately caused the injury. *Meyers*, 197 Wn.2d at 287. "The threshold determination of whether the defendant owes a duty to the plaintiff is a question of law." *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 128, 875 P.2d 621 (1994). "[A] person's status, based on the common law classifications of persons entering upon real property (invitee, licensee, or trespasser), determines the scope of the duty of care owed by the possessor (owner or occupier) of that property." *Tincani*, 124 Wn.2d at 128. A business invitee " ' is invited to enter or remain on land' " for purposes connected with business dealings of the landowner. *Fuentes v. Port of Seattle*, 119 Wn. App. 864, 869, 82 P.3d 1175 (2003) (internal quotation marks omitted) (quoting *Younce v. Ferguson*, 106 Wn.2d 658, 667, 724 P.2d 991 (1986)).

In general, there is no duty to protect others from third-party criminal activity, but such a duty may arise if there is a special relationship between the parties. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 199-200, 943 P. 2d 286 (1997). For example, "a business owes a duty to its

invitees to protect them from imminent criminal harm and reasonably foreseeable criminal conduct by third persons." *Nivens*, 133 Wn. 2d at 205.

B. ANALYSIS

Brown asks us to hold that she and Foster were business invitees when they were assaulted on Jean K LLC's property and retained this status in the adjacent parking lot because "the assault's escalation to a shooting . . . does not change their invitee status for purposes of determining whether Jean K LLC owed them a duty." Br. of Appellant at 34.[1] In so arguing, Brown concedes that the shooting occurred in the adjacent parking lot, even if the initial assault occurred in Jean K LLC's parking lot.

Washington has adopted the definition of "invitee" found in the *Restatement (Second) of Torts* § 332 (1965). *Younce* 106 Wn.2d at 667. Under this definition, a person is designated as a business invitee if they are "invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Younce*, 106 Wn.2d at 667. This interaction is what creates a special relationship between the parties, and this special relationship is what leads to heightened duties on the part of the landowner, such as protecting the invitee from third-party criminal activity under certain circumstances. *McKown v. Simon Prop. Grp., Inc.*, 182 Wn.2d 752, 766, 344 P.3d 661 (2015). Therefore, a duty to a business invitee is framed in terms of the invitee's relationship with the landowner. *See, e.g.*, *Tincani*, 124 Wn.2d at 128.

---

[1] For purposes of this appeal, Jean K LLC does not argue that Foster and Brown were not business invitees of Jean K LLC while in Jean K LLC's parking lot. *See* Br. of Resp't at 21 ("If Petitioners were ever business invitees . . ."); Br. of Resp't at 34 ("if Appellants were Jean K's business invitees . . .").

Washington courts have "continued to recognize under premises liability standards that the duty to protect invitees is not a broad duty but a limited one, in recognition that it is often unfair to place the burden of third parties' criminal conduct on a business." *McKown*, 182 Wn.2d at 766. Washington has adopted *Restatement* § 344 regarding the duty to protect business invitees from third party criminal conduct. *McKown*, 182 Wn.2d at 769-70; *Nivens*, 133 Wn.2d at 204. This section of the *Restatement* provides:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the . . . intentionally harmful acts of third persons.

RESTATEMENT § 344. This court has explained that this section contemplates foreseeable criminal acts "that occur *on the possessor's land.*" *Minahan v. W. Wash. Fair Ass'n*, 117 Wn. App. 881, 893, 73 P.3d 1019 (2003).

Furthermore, regarding the scope of the invitation, the supreme court has explained: "Duties to invitees exist only when an individual is on the physical plot of land within the area of invitation. '[T]he visitor has the status of an invitee only while he [or she] is on the part of the land to which his [or her] invitation extends.' " *Tincani*, 124 Wn.2d at 140-41 (quoting RESTATEMENT § 332 cmt. l). The comment from the *Restatement* quoted here further states:

> The mere fact that the possessor knows that invitees in general, or a particular invitee, will be likely to go into parts of the premises to which he is not invited, is not enough in itself to bring such places within the area of invitation, unless the visitor is reasonably led to believe that he is so invited. *An invitation usually includes the use of such parts of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his purpose is to be carried out.* If the possessor has intentionally or negligently misled him into the reasonable belief that a particular passageway or door is an appropriate means of reaching the area of his invitation, the visitor is entitled to the protection of an invitee when he makes use of it.

RESTATEMENT § 332 cmt. l (emphasis added).

Jean K LLC argues that the parties' license agreement does not create a duty because it did not grant Jean K LLC any ownership or right to control the adjacent parking lot. Although the adjacent parking lot was not owned by Jean K LLC, the parking lot extends continuously from Jean K LLC's parking lot and Latitude 84 customers often used the adjacent parking lot. And Jean K LLC's lawyer sent the owner of the adjacent parking lot a letter stating that the license agreement permitted Latitude 84 customers to park in the adjacent parking lot.

The license agreement extended the duty owed to business invitees of Jean K LLC because it extended Latitude 84's parking lot. The agreement was entered into "to allow reasonable vehicular access between the two parking lots" and "enhance the customer flow between the [p]roperties," and specifically "grants reciprocal use of the respective parties' parking lots and any ingress/egress from either [p]roperty to the main roads." CP at 706-07. Under *Restatement* § 332 cmt. l, if a business owner misleads an invitee "into the reasonable belief that a particular passageway or door is an appropriate means of reaching the area of his invitation, the visitor is entitled to the protection of an invitee when he makes use of it." Both the language of the license agreement and Jean K LLC's conduct in advocating for its customers' use of the adjacent parking lot shows that the adjacent parking lot was held open to Jean K LLC's business invitees.

Accordingly, we hold that the trial court erred when it denied Brown's motion for reconsideration based on the newly discovered evidence of the license agreement. Further, the trial court's order granting summary judgment to Jean K LLC was erroneous if it was based on the conclusion that Jean K LLC's duties to business invitees did not extend to the adjacent lot.

CONCLUSION

We hold that the adjacent parking lot was held open to Jean K LLC business invitees as a means of ingress and egress and, therefore, Jean K LLC's duty to protect business invitees from third party criminal conduct extends into the adjacent parking lot. Accordingly, we reverse the trial court's order denying Brown's motion for reconsideration as well as the order granting summary judgment to Jean K LLC to the extent that the order is based on the conclusion that Jean K LLC did not owe a duty to its business invitees while they were in the adjacent parking lot. We remand for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Cruser, A.C.J.

We concur:

Worswick, J.

Price, J.