SALLYE BROWN, Substitute Administratrix of the Estate of Whelete Venita Collins v. NORTH CAROLINA WESLEYAN COLLEGE, INC.

No. 827SC1275

(Filed 20 December 1983)

**Colleges and Universities § 4; Negligence § 57.10— liability of college or university for criminal attack by third person upon students—summary judgment for defendant proper**

The foreseeability of a criminal assault determines a college's duty to safeguard its students from criminal acts of third persons; therefore, evidence that the most serious crimes on defendant's campus in the past were a break-in at the college business office approximately 10-12 years prior to the assault on plaintiff's intestate, a break-in and vandalism of some vending machines approximately five years prior to the assault on plaintiff's intestate, a reported attempted rape in 1978, a fight between campus students and community

youth on campus in 1980, and the fact that inmates from a detention center attended the college's home basketball games were insufficient to raise a triable issue as to whether the abduction and subsequent murder of plaintiff's intestate was reasonably foreseeable. Even if there was a duty, the forecast of evidence disclosed no breach of the duty where defendant's affidavits tended to show that defendant had a security staff composed of three full-time students, two full-time non-students, and a Director of Security; that at least one security officer was on duty each hour of the day; a security officer was responsible for, among other things, reporting lighting problems to the Director and replacing burned out bulbs on buildings; each officer was equipped with a uniform, a mobile radio, and had access to a recognizable security vehicle; and in addition, the campus, which had 408 residents in 1980, was regularly patrolled by members of the Nash County Sheriff's Department.

APPEAL by plaintiff from *Rouse, Judge.* Judgment entered 12 July 1982 in Superior Court, NASH County. Heard in the Court of Appeals 25 October 1983.

*Amos E. Link, Jr., for plaintiff appellant.*

*Horton & Michaels, by Walter L. Horton, Jr., and John A. Michaels, for defendant appellee.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Joseph W. Grier, Jr. and Christian R. Troy, amicus curiae North Carolina Association of Independent Colleges and Universities.*

BECTON, Judge.

On 3 December 1980, after a basketball game, plaintiff's intestate, a non-resident student and a cheerleader at defendant North Carolina Wesleyan College, was abducted from defendant's campus, along with two other cheerleaders, and was forced by one Kermit Smith to drive to a rock quarry near Roanoke Rapids, North Carolina, where she was raped and murdered. Smith was subsequently tried and convicted of the crimes. His convictions were upheld by the North Carolina Supreme Court. *See State v. Smith,* 305 N.C. 691, 292 S.E. 2d 264, *cert. denied,* --- U.S. ---, 74 L.Ed. 2d 622, 103 S.Ct. 474 (1982).

This appeal concerns the liability of a college or university for a criminal attack by a third person upon its students. The trial court granted summary judgment for the defendant. For the reasons that follow, we hold that summary judgment was proper in this case.

I

Plaintiff filed this action on 3 December 1981 alleging that defendant was negligent in that it (a) allowed people which it knew or should have known to have unsavory character and dangerous propensities to loiter on its campus; (b) knew or should have known of Smith's presence on its campus, and failed to require him to leave; (c) failed to adequately light and keep in a reasonably safe condition its parking lots and common areas; (d) violated its duty to exercise due care by failing to provide adequate security for its students within its common areas and parking lots; (e) violated its duty to exercise due care in protecting its students from foreseeable criminal assaults by third persons on the common premises; and (f) violated its duty to warn plaintiff's intestate of the dangerous conditions on its campus. The complaint also alleged causes of actions for defendant's breach of its own security rules and the North Carolina General Statutes, breach of warranty, and breach of covenant of quiet enjoyment.

Defendant filed an answer denying the material allegations of the complaint, and moved for summary judgment. Based upon the pleadings, affidavits, and transcript excerpts presented from Smith's trial, the trial court granted defendant's motion. Plaintiff appeals.

II

As a general rule, a landowner has no duty to protect one on his premises from criminal attack by a third person, but if such an attack is reasonably foreseeable, such a duty may arise between a landowner and his invitee. 62 Am. Jur. 2d *Premises Liability* § 26 (1972). Our Supreme Court, in *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 281 S.E. 2d 36 (1981), recently embraced foreseeability as the standard for determining the extent of a landowner's duty to protect his business invitees from the criminal acts of third persons. In *Foster*, the plaintiff was assaulted and robbed in the parking lot of defendant's shopping mall. In holding that foreseeability is the test, the court quoted the Restatement (Second) of Torts § 344 (1963):

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such

a purpose, for physical harm caused by the accidental, neg-
ligent, or intentionally harmful acts of third persons or
animals, and by the failure of the possessor to exercise
reasonable care to (a) discover that such acts are being done
or are likely to be done, or (b) give a warning adequate to
enable the visitors to avoid the harm, or otherwise to protect
them against it.

Comment f to section 344 further provides:

Since the possessor is not an insurer of the visitor's safe-
ty, he is ordinarily under no duty to exercise any care until
he knows or has reason to know that the acts of the third
person are occurring, or are about to occur. He may, how-
ever, know or have reason to know, from past experience,
that there is a likelihood of conduct on the part of third per-
sons in general which is likely to endanger the safety of the
visitor even though he has no reason to expect it on the part
of any particular individual. If the place or character of his
business, or his past experience, is such that he should rea-
sonably anticipate careless or criminal conduct on the part of
the third persons, either generally or at some particular
time, he may be under a duty to take precautions against it,
and to provide a reasonably sufficient number of servants to
afford a reasonable protection.

303 N.C. at 639-40, 281 S.E. 2d at 38-39. The *Foster* Court held
that plaintiff's forecast of evidence, revealing 31 reported in-
cidents of criminal activity in defendant's parking lot in the
twelve months prior to her assault, was sufficient to raise a gen-
uine issue of material fact as to whether an assault upon the
plaintiff was reasonably foreseeable. *Accord Urbano v. Days Inn
of America, Inc.*, 58 N.C. App. 795, 295 S.E. 2d 240 (1982).

Recently, our Supreme Court held that a parent may incur
tort liability for the criminal assault of a child if it can be shown
"that the parent knew or in the exercise of due care should have
known of the [dangerous] propensities of the child and could have
reasonably foreseen that failure to control those propensities
would result in injurious consequences." *Moore v. Crumpton*, 306
N.C. 618, 624, 295 S.E. 2d 436, 440 (1982).

More recently, this Court held that the "foreseeability of
harm to pupils in the class or at the school is the test of the ex-

tent of the teacher's duty to safeguard her pupils from dangerous acts of fellow pupils. . . ." *James v. Charlotte-Mecklenburg Board of Education*, 60 N.C. App. 642, 648, 300 S.E. 2d 21, 24 (1983).

It follows from these decisions that a college can be liable for a criminal assault by a third party upon one of its students under certain circumstances. Foreseeability of a criminal assault, however, determines a college's duty to safeguard its students from criminal acts of third persons. This position is in accord with the decisions of other states. *See Chavez v. Tolleson Elementary School Dist.*, 122 Ariz. 472, 595 P. 2d 1017 (Ct. App. 1979); *Relyea v. State*, 385 So. 2d 1378 (Fla. Dist. Ct. App. 1980); *see also* Annot., 1 A.L.R. 4th 1099 (1980).

### III

We now examine the forecasts of evidence to determine whether there was a repeated course of conduct such as to put defendant on notice that it was reasonably foreseeable that an attack upon plaintiff's intestate might occur.

The affidavits presented by defendant tend to indicate that the most serious crimes on campus in the past were a break-in at the college business office approximately 10-12 years prior to the assault on plaintiff's intestate, a break-in and vandalism of some vending machines approximately five years prior to the assault on plaintiff's intestate, and a reported attempted rape in 1978. On the other hand, plaintiff's lone affidavit, that of Yolanda Woods, who was also kidnapped by Smith, tends to indicate that there had been a fight between campus students and some community youth on campus in 1980. Ms. Woods also stated in her deposition that, prior to 3 December 1980, inmates from the Richard T. Fountain Detention Center for Boys attended the college's home basketball games, and based upon her information and belief, these inmates also attended the basketball game on 3 December 1980.

Based upon this forecast of evidence, we conclude that the scattered incidents of crime through a period beginning in 1959 were not sufficient to raise a triable issue as to whether the abduction and subsequent murder of plaintiff's intestate was reasonably foreseeable. The forecast of evidence does not show a repeated course of criminal activity which would have imposed a

duty upon defendant to keep its campus safe. There is nothing in the record to indicate that the inmates from the detention center were dangerous, unchaperoned, or had caused problems in the past, or that persons which defendant knew had dangerous propensities were on campus that evening, or any evening.

Even if the one attempted rape in 1978 was sufficient to impose a duty upon defendant to safeguard its students from criminal assaults, the forecasts of evidence disclose no breach of duty. Defendant's affidavits tend to show that defendant had a security staff composed of three full-time students, two full-time non-students, and a Director of Security in 1980. At least one security officer was on duty each hour of the day. A security officer was responsible for, among other things, reporting lighting problems to the Director and replacing burned out bulbs on buildings. Each officer was equipped with a uniform, a mobile radio, and has access to a recognizable security vehicle. In addition, the campus, which had 408 residents in 1980, was regularly patrolled by members of the Nash County Sheriff's Department.

Ms. Woods's affidavit, on the other hand, tends to indicate that several of the lights on campus were broken that evening and that defendant only had one plainclothes security officer on duty at the time of the abduction. Ms. Woods's affidavit, however, does not indicate that the lighting was poor in the area where she was abducted.

### IV

Plaintiff only argues her cause of action for negligence in her brief. She is thereby deemed to have abandoned her other causes of action pursuant to Rule 28 of the North Carolina Rules of Appellate Procedure. *Crockett v. First Federal Sav. & Loan Ass'n.,* 289 N.C. 620, 224 S.E. 2d 580 (1976).

### V

Based upon the materials in the record, we conclude that there is no genuine issue of material fact, and thus summary judgment for defendant was proper. N.C. Gen. Stat. § 1A-1, Rule 56 (1969); *Lowe v. Bradford,* 305 N.C. 366, 289 S.E. 2d 363 (1982). The judgment of the trial court is

Affirmed.

Judges HEDRICK and ARNOLD concur.