The undersigned have reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Scott M. Taylor. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, as STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Mr. Robert Brown was an employee of the North Carolina Department of Correction on 8 April 1990 and at all times pertinent to this action.
4. Mr. Kinsley McKenneth Miller shot and killed Mr. Stacy Humphries and shot Tyrone Humphries on or about 8 April 1990, while Mr. Miller was subject to the custody of the North Carolina Department of Correction, under electronic house arrest.
5. Mr. Robert Brown was responsible for supervising Mr. Kinsley McKenneth Miller while Mr. Miller was subject to electronic house arrest.
6. Previous to the incident where Mr. Kinsley Miller killed Mr. Stacy Humphries and wounded Mr. Tyrone Humphries, Mr. Miller was placed on probation in Superior Court of Guilford County in Case 87-CRS-26580 for the felony of larceny of a firearm. Mr. Miller was placed on probation on 7 March 1988.
7. Mr. Kinsley Miller had as his probation officer for this probation Mr. Steve Burkhead.
8. On 3 March 1989, Probation Officer Steve Burkhead filed a violation report on Mr. Kinsley Miller, which is stipulated into evidence.
9. The probation violation report had not been heard by 8 April 1990, which is the date Mr. Kinsley Miller murdered Mr. Stacy Humphries and wounded Mr. Tyrone Humphries. This violation report was pending on that date.
10. Plaintiff's Exhibits 1 through 17, as identified by an Index to Plaintiff's Trial Exhibits, are stipulated into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Mr. Kinsley McKenneth Miller was placed on probation on 6 December 1989 by the Honorable Kenneth Griffin, Superior Court Judge presiding, in Mecklenburg County, in relation to Mr. Miller's convictions for possession with intent to sell and distribute cocaine, and conspiracy to possession with intent to sell and distribute cocaine.
2. Mr. Miller was then placed by the Court on electronic house arrest in December of 1989.
3. Under the terms and conditions of the electronic house arrest, Mr. Miller was allowed freedom of travel on his work days starting one hour prior to his starting work time and ending one hour after his leaving work. Otherwise, unless permitted by his probation officer, Mr. Miller was to have remained at his mother's residence.
4. Defendant's named employee, Mr. Robert Brown, was Mr. Miller's probation officer on and before 8 April 1990.
5. Prior to 8 April 1990, on 11 July 1989, plaintiff was convicted of an assault inflicting serious injury. Mr. Brown knew or should have known of Mr. Miller's prior conviction. In addition, Mr. Brown knew or should have known that Mr. Miller was classified as a high risk person.
6. By 13 March 1990, Mr. Robert Brown was aware that Mr. Miller was involved in possible drug dealing.
7. By 20 March 1990, Mr. Robert Brown was aware that Mr. Miller was ready to be charged with federal firearms violations.
8. In performing his duties as a probation officer, Mr. Brown visited Mr. Miller at his residence once a week in order to inspect visually Mr. Miller's electronic leg band and the transmitter used in monitoring Mr. Miller.
9. By 27 March 1990, Mr. Brown knew that Mr. Miller had had three broken leg bands within the previous fourteen days. Mr. Miller attributed the breakage to his employment at All State Restaurant Equipment.
10. In addition, on 3 April 1990, Mr. Brown knew that Mr. Miller had broken another leg band.
11. When Mr. Miller's leg bands were broken, Mr. Miller was able to leave his residence during unauthorized times and go wherever he had the resources to go. Mr. Miller accomplished this by manipulating the location of the broken band with the transmitter in his residence.
12. On 8 April 1990, Mr. Miller had broken another leg band.
13. Mr. Brown verified Mr. Miller's employment when he was first employed at All State Restaurant Equipment; however, thereafter, Mr. Brown had no further contact with Mr. Miller's employer until he learned that Mr. Miller was the suspect in a murder case.
14. On 10 April 1990, Mr. Brown learned that Mr. Miller worked at his probationary employment from 15 January 1990, until he was fired on 29 March 1990. Mr. Miller was fired due to his ignoring instructions and damaging equipment.
15. By his failure to contact Mr. Miller's employer between 15 January 1990 until 10 April 1990, when Mr. Brown learned that Mr. Miller was a suspect in a murder case, Mr. Brown breached his duty to exercise ordinary care in his capacity as Mr. Miller's probation officer.
16. Had Mr. Brown exercised ordinary care in his duties as Mr. Miller's probation officer, Mr. Brown would have been on notice that Mr. Miller's accounts regarding the breakage of his leg bands were not credible, that Mr. Miller was fired on 29 March 1990 and that Mr. Miller was unemployed on 8 April 1990.
17. As a result of his breach of his duty to exercise ordinary care, given the violations by Mr. Miller of his electronic house arrest, his prior convictions, suspected drug dealing and suspected firearms violations, Mr. Brown knew or should have known that Mr. Miller needed intensive supervision, or knew or should have known that proceedings should have been initiated to revoke Mr. Miller's probation.
18. As the proximate result of Mr. Brown's breach of his duty to exercise ordinary care in his supervisory capacity as Mr. Miller's probation officer, Mr. Brown knew or should have known that given Mr. Miller's violations of his electronic house arrest, his prior convictions, which included drug dealing and assault inflicting serious injury, suspected drug dealing and suspected federal firearms violations, it was reasonably foreseeable that Mr. Miller would continue to violate his parole, leave his premises on an unauthorized basis, and engage in additional felonious activity, including assaults which could involve firearms.
19. On the evening of 8 April 1990, while violating his electronic house arrest, Mr. Miller went to a bar with a loaded firearm. At that time, Mr. Brown was unaware that Mr. Miller had been fired from his employment since 29 March 1990.
20. On 8 April 1990, Mr. Stacy Humphries and his cousin, Mr. Tyrone Humphries, encountered Mr. Miller in the same bar. Mr. Stacy Humphries had known Mr. Miller prior to that evening; however, Mr. Tyrone Humphries did not know Mr. Miller prior to 8 April 1990.
21. On 8 April 1990, when Mr. Stacy Humphries saw Mr. Miller at the bar, Mr. Stacy Humphries asked Mr. Miller for some money, which Mr. Miller may have owed for a television set.
22. When Mr. Miller and Mr. Stacy Humphries began to argue, Mr. Tyrone Humphries intervened, telling them to cool off. Mr. Miller then took out his loaded firearm, held it to Mr. Tyrone Humphries' forehead, stuck it in his mouth, moved it slowly down his chest and fired into Mr. Tyrone Humphries' abdomen. Mr. Stacy Humphries then began to run out of the club. Mr. Miller followed him, and then shot and killed Mr. Stacy Humphries.
23. There was negligence on the part of Mr. Brown while acting within the scope of his employment which was the proximate cause of the injury of Mr. Tyrone Humphries, and the death of Mr. Stacy Humphries.
24. Mr. Tyrone Humphries was not contributorily negligent for the injuries which he sustained as a result of being shot by Mr. Miller.
25. Mr. Stacy Humphries was not contributorily negligent for his death which resulted from being shot by Mr. Miller. At the time of his death, Mr. Stacy Humphries was 23 years old.
26. As a result of the shooting by Mr. Miller, Mr. Tyrone Humphries underwent two separate surgeries. The first surgery was to do a temporary colostomy. The second surgery was to do a laparotomy and resection of the colostomy.
27. As a result of the shooting by Mr. Miller, Mr. Tyrone Humphries sustained repulsive scarring to his body to such an extent that he is embarrassed to remove his shirt, even when swimming. In addition, as a result of the shooting by Mr. Miller, Mr. Tyrone Humphries has to evacuate his bowels immediately after every meal.
28. Mr. Tyrone Humphries was 22 years old at the time that he was shot. As a result of the shooting and surgical repair, Mr. Tyrone Humphries can no longer play basketball, and cannot work at a warehouse which would require lifting heavy weights. In addition, as a result of the shooting by Mr. Miller, Mr. Tyrone Humphries' social life has been curtailed out of fear.
29. The reasonable value of the economic loss for the death of Mr. Stacy Humphries, including the value of his society, companionship and comfort, is the statutory allowable limit in 1990 of $100,000.00.
30. The reasonable value of the economic loss sustained by Mr. Tyrone Humphries, and the reasonable value of the pain and suffering which Mr. Tyrone Humphries endured as a result of the shooting by Mr. Miller is the statutory allowable limit in 1990 of $100,000.00.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Mr. Stacy Humphries was not contributorily negligent for his death. G.S. § 143-291 et seq.
2. As a result of the negligence on the part of defendant's named employee while acting within the scope of his employment which was the proximate cause of the death of Mr. Stacy Humphries, the State is liable to the Estate of Stacy Humphries in the amount of $100,000.00. G.S. § 143-291 et seq.; Cf., Brown v. WesleyanCollege, 65 N.C. App. 579, 309 S.E.2d 701 (1983).
3. Mr. Tyrone Humphries was not contributorily negligent for the injuries which he sustained on or about 8 April 1990. G.S. § 143-291 et seq.
4. As a result of the negligence on the part of defendant's named employee while acting within the scope of his employment which was the proximate cause of the injury sustained by Mr. Tyrone Humphries, the State is liable to Mr. Tyrone Humphries for damages in the amount of $100,000.00. G.S. § 143-291 et seq.; Cf.,Brown v. Wesleyan College, 65 N.C. App. 579, 309 S.E.2d 701
(1983).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. The State shall pay the Estate of Mr. Stacy Humphries the sum of $100,000.00.
2. The State shall pay Mr. Tyrone Humphries the sum of $100,000.00.
3. The State shall pay the costs.
 S/ _______________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ _____________________ WILLIAM L. HAIGH CHIEF DEPUTY COMMISSIONER
CMV/cnp/mj 11/15/95