The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Laura K. Mavretic. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or to amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
STIPULATIONS
1. This claim was filed with the Industrial Commission on or about 12 May 1993.
2. The Industrial Commission has jurisdiction over this tort claim pursuant to N.C. Gen. Stat. § 143-291 et seq., and the parties are properly before this Court.
3. The date of the alleged negligent act giving rise to this claim is 3 February 1993.
4. The employee of the State allegedly involved in this incident was Allen Edwards, who is head of security for Pitt Community College.
5. At the time in question, Allen Edwards was acting within the scope of his employment.
6. A map of Pitt Community College campus was stipulated into evidence as Stipulated Exhibit 1.
7. Plaintiff's medical records and bills were stipulated into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. As of 3 February 1993, defendant's employee Allen Edwards was head of security for Pitt Community College (hereafter PCC). The security force on the 4,000-student campus consisted of three full-time officers and other part-time officers as needed. Officer Jack Raines patrolled the campus from early morning until 2:00 p.m., at which time Officer Lee Bowen took over patrolling until closing. Chief Edwards supervised and filled in on patrol as needed. The college has no residential facilities and after the last class has ended, no persons remain on campus.
2. Plaintiff was sporadically enrolled as a student at PCC. At the time of the hearing she was 24 years. Plaintiff was married to Derek Credle, with whom she had two small children. Throughout her enrollment as a student, she continuously had domestic problems with her husband, who physically and emotionally abused her.
3. During the spring of 1992, plaintiff informed Chief Edwards about her domestic problems and that she was afraid of her husband. She gave Chief Edwards a copy of her class schedule, and the security officers occasionally monitored her going to and from classes.
4. On 9 March 1992, plaintiff complained to Chief Edwards about Mr. Credle's presence on campus. Chief Edwards took Mr. Credle into custody and transported him to the Pitt County Courthouse where he was served with an outstanding warrant and detained for possible violation of a domestic violence order.
5. Plaintiff subsequently quit school until re-enrolling in December 1992. At that time, plaintiff had terminated the personal relationship with Derek Credle and no longer associated with him voluntarily.
6. On 6 January 1993, plaintiff's car was vandalized when the tires were cut while it was parked on campus. Plaintiff did not report this incident to campus security until requested to do so by Officer Raines who observed the tow truck assisting plaintiff. After this incident, campus security gave plaintiff permission to park her car near the public safety trailer in order to prevent further vandalism of her car.
7. Her car was again vandalized on 14 January 1993, while parked in a regular student parking lot rather than near the security trailer. Plaintiff believed that defendant was responsible for these acts of vandalism.
8. On 15 January 1993, Derek Credle was observed in a library on campus. Officer Bowen apprehended Derek Credle and took him to the office of the Dean of Students, who instructed Mr. Credle not to return to campus. During this incident, plaintiff cooperated with the security officers and willingly left the campus. He did not exhibit any hostility or make any threats.
9. The morning of 3 February 1993, plaintiff discovered that her license plate had been stolen and subsequently had an angry telephone discussion with Derek Credle about the incident. Members of plaintiff's family were also involved in this phone call. Plaintiff then went to her first morning class at PCC, then left to replace the license tag. She returned to campus at approximately 10:45 a.m. and parked near the security office. Plaintiff did not inform campus security of the events which occurred earlier that morning.
10. As plaintiff was walking to class, Derek Credle confronted her, brandishing a small handgun. Plaintiff attempted to run away but was caught by Mr. Credle, who put the gun against her head and fired three times, striking her once in the head.
11. Prior to the shooting Officer Raines had been patrolling in his car. At the time of the crime, Officer Raines had gone back to the security trailer to meet with a sheriff's deputy to provide certain documents to him. Within several minutes after the shooting, Officer Raines arrived on the scene and apprehended Derek Credle after a brief chase.
12. As a result of the shooting incident, part of the bullet remains lodged inside plaintiff's brain and cannot safely be surgically removed. She continues to suffer severe headaches and post-traumatic syndrome. Plaintiff has incurred medical bills in excess of $16,337.55 and requires continuing medical care.
13. No security officer at PCC specifically promised plaintiff that she would receive special protection from any harm by Derek Credle, and no special relationship existed between plaintiff and PCC so as to create a specific duty of protection.
14. The crime history at PCC for several years prior to February 1993 did not indicate a high and frequent rate of crime or of serious assaults. The patrolling routine by the officers on 3 February 1993, was reasonable and adequate in light of the limited crime history of the campus.
15. The criminal assault by Derek Credle was not foreseeable to the security officers at PCC on 3 February 1993. Their prior dealings with Derek Credle did not put them on notice that Mr. Credle would cause harm to plaintiff with a firearm. Plaintiff had not informed the security officers of the earlier confrontations with Derek Credle on the morning of the assault and did not request any protection or help that day. She went unescorted to her earlier class on the campus and to the Department of Motor Vehicles office.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Under the public duty doctrine, a public entity has no liability for failure to furnish police protection to a specific individual unless there is a special relationship between the injured person and law enforcement or when the law enforcement officials create a special duty by promising protection, the protection is not forthcoming and the individual's reliance on the promise of protection is causally related to the injury suffered. Braswell v. Braswell,330 N.C. 363, 410 S.E.2d 897, rehearing denied, 330 N.C. 854,413 S.E.2d 550 (1991); Coleman v. Cooper, 89 N.C. App. 188,366 S.E.2d 2, disc. rev. denied, 322 N.C. 834, 371 S.E.2d 275 (1988).
2. Due to the limited resources available to the security officers on a campus of the size of PCC, defendant had made no specific promise to protect plaintiff from harm by Derek Credle, and there was no special relationship between plaintiff and the security officers. Therefore, defendant had no duty to prevent the assault on plaintiff.
3. There was no repeated course of conduct by Derek Credle, who prior to that time had cooperated with security officers and had posed no physical threat to plaintiff, such as to put defendant on notice that it was reasonably foreseeable that an attack on plaintiff would be made by Derek Credle. See, Brown v.N.C. Wesleyan College, 65 N.C. App. 579, 309 S.E.2d 701 (1983).
4. There was no negligent act on the part of Allen Edwards which proximately caused an injury to plaintiff. Therefore, plaintiff is entitled to no damages. N.C. Gen. Stat. § 143-291 etseq.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of former Deputy Commissioner Mavretic and enters the following:
ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
 S/ _____________________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________________ J. RANDOLPH WARD, JR. COMMISSIONER
S/ ______________________________ MARY MOORE HOAG DEPUTY COMMISSIONER